1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

| | |
|---|---|
| MARK GELAZELA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Case No. 1:21-cv-01499-AWI-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED ON PLAINTIFF'S CLAIM AGAINST DEFENDANT MOORE FOR DELIBERATE INDIFFERENCE TO HIS SERIOUS MEDICAL NEEDS IN VIOLATION OF THE EIGHTH AMENDMENT AND ON HIS FEDERAL TORT CLAIMS ACT CLAIM AGAINST THE UNITED STATES; THAT PLAINTIFF'S <u>BIVENS</u> CLAIMS AGAINST DEFENDANTS WHITE, LEPE, LEHMAN, BLOCHER, FCI MENDOTA, AND THE BUREAU OF PRISONS BASED ON A LACK OF MEDICAL CARE FOR PLAINTIFF'S KNEE BE DISMISSED WITH PREJUDICE; THAT PLAINTIFF'S ADA AND REHABILITATION ACT CLAIMS BE DISMISSED WITH PREJUDICE; AND THAT ALL OTHER CLAIMS BE DISMISSED WITHOUT PREJUDICE<br><br>(ECF No. 13)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS |

28

Mark Gelazela ("Plaintiff") is a former prisoner proceeding *pro se* and *in forma*

1

*pauperis* in this action. Plaintiff filed the complaint commencing this action on October 8, 2021. (ECF No. 1). On November 16, 2021, the Court screened Plaintiff's complaint and found that it failed to state any cognizable claims. (ECF No. 12). The Court gave Plaintiff thirty days to either: "a. File a First Amended Complaint; or b. Notify the Court in writing that he wants to stand on his complaint." (Id. at 11).

On December 10, 2021, Plaintiff filed his First Amended Complaint. (ECF No. 13). In Plaintiff's complaint, Plaintiff brings numerous claims, including claims based on: a lack of medical care for his knee; the failure to properly/timely process his CARES Act release package; denial of access to courts; exposure of Plaintiff to COVID in violation of protocol and other allegedly unconstitutional conditions of confinement; and denial of the Eucharist, which allegedly violated his religious rights.

Given that Plaintiff's first claim, which is based on the treatment Plaintiff received (or failed to receive) for his knee, is not related to his other claims, the Court only substantively screened Plaintiff's first claim and related claims.

As to Plaintiff's first claim and the related claims, the Court finds that the following claims should proceed past the screening stage: Plaintiff's claim against defendant Moore for deliberate indifference to his serious medical needs in violation of the Eighth Amendment and Plaintiff's Federal Tort Claims Act claim against the United States based on the treatment Plaintiff received (or failed to receive) for his knee. The Court also finds that Plaintiff fails to state a Bivens claim against defendants White, Lepe, Lehman, Blocher, FCI Mendota, and the Bureau of Prisons based on the treatment Plaintiff received (or failed to receive) for his knee. The Court also finds that Plaintiff fails to state an Americans With Disabilities Act claim or a Rehabilitation Act claim.

As to Plaintiff's unrelated claims, the Court finds that those claims should be dismissed, without prejudice to Plaintiff bringing them in a separate suit.

Accordingly, the Court will recommend that: 1) This case proceed on Plaintiff's claim against defendant Moore for deliberate indifference to his serious medical needs in violation of the Eighth Amendment and on Plaintiff's Federal Tort Claims Act claim against the United

States based on the treatment Plaintiff received (or failed to receive) for his knee;[1] 2) Plaintiff's Bivens claims against defendants White, Lepe, Lehman, Blocher, FCI Mendota, and the Bureau of Prisons based on the treatment Plaintiff received (or failed to receive) for his knee be dismissed with prejudice; 3) Plaintiff's Americans With Disabilities Act claim and Rehabilitation Act claim be dismissed with prejudice; and 4) All other claims be dismissed without prejudice to Plaintiff bringing them in separate lawsuit(s).

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections. In his objections, Plaintiff may ask the Court to sever his unrelated claims into separate case(s) instead of dismissing them. If he does so, Plaintiff should clearly identify the subject matter, the related issues, and the defendants he wants severed into separate case(s).

## I.      SCREENING REQUIREMENT

As Plaintiff is proceeding *in forma pauperis* (ECF No. 11), the Court screens the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts

---

[1] Plaintiff asks the Court to serve his First Amended Complaint. (ECF No. 13, p. 3). The Court notes that, if these findings and recommendations are adopted, the Court will provide Plaintiff with service documents to complete and return, and once Plaintiff has returned those documents, the Court will serve defendant Moore and defendant United States.

"are not required to indulge unwarranted inferences." <u>Doe I v. Wal-Mart Stores, Inc.</u>, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  <u>Iqbal</u>, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers."  <u>Hebbe v. Pliler</u>, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after <u>Iqbal</u>).

## II.    SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff alleges as follows in his First Amended Complaint:

Plaintiff was fully exonerated in court of any wrongdoing in his criminal case, but unfortunately, this exoneration occurred after the verdict, so it did not prevent Plaintiff from being wrongfully incarcerated pending appeal for a new trial under Rule 33.

Plaintiff was fresh off crutches after surgery and wearing a full metal leg-brace to lock his knee in place when he was remanded into custody without warning.  Plaintiff has filed a separate case against different parties who willfully re-damaged Plaintiffs surgical repair when "indoctrinating" him.

Upon arriving at Federal Correctional Institution Mendota ("FCI Mendota"), Plaintiff explained this to defendant Moore, the only physician at FCI Mendota.  Defendant Moore accused Plaintiff of faking his injury.

Plaintiff is a 50% service-connected disabled Marine Corps veteran (now 70% due to reevaluation after further damage from the neglect and actions of Defendants) who served honorably for ten years.  So, his knee issue is well documented, including being documented by those in the criminal administration system prior to Plaintiff arriving at FCI Mendota.  Moreover, Plaintiff arrived still in a complex, full length, metal knee brace, as he was only six weeks post-surgery.  Plaintiff not only had the internal knee pictures from the actual knee surgery with him, but also had a copy of a letter from his world-renown surgeon describing the surgery and Plaintiff's tender physical condition.  The letter also stated that Plaintiff's motion should be strictly limited.

Over the course of the next year and a half, defendant Moore willfully neglected to give

any care to Plaintiff's knee.  He refused to put Plaintiff on limited duty status, and he ignored Plaintiff's requests to be sent out for an MRI to "re-prove," per defendant Moore's mandate, that Plaintiff's knee was indeed reinjured.  Defendant Moore did this even though he had the Bureau of Prisons' medical history for Plaintiff, which showed Plaintiff's medical problems, as well as the pictures from surgery and the surgeon's letter.

Additionally, defendant Moore refused to issue the necessary form for Plaintiff to receive his additional form-fitting specialized knee brace that was supposed to replace his old knee brace after three months, per his surgeon's orders.  Defendant Moore shouted Plaintiff out of his office when Plaintiff asked for the form for a second time in person.  Defendant Moore even refused to issue ibuprofen.

Because defendant Moore refused, Plaintiff had no choice but to send the brace to his "unit team" any way, hoping they would exercise clemency where Moore would not.  However, the brace, which was sent by certified mail, was thrown in the trash by the mail room (Officer Goodrich, the mailroom officer, said that it was returned, but Plaintiff never received it back, nor is there any record of it being returned).

After dozens of medical "cop-outs" requesting care and other administrative actions, Plaintiff received an MRI and its results in May and June of 2021, respectively (a year and a half after being incarcerated.  The MRI was delayed further because defendant Moore annotated the incorrect knee on the authorization paperwork, a mistake that defendant Moore made repeatedly).  The MRI and imaging results showed that Plaintiff's knee was indeed reinjured.  In addition to the fully torn ACL and both Menisci being torn, it also showed there was a fluid cyst that formed.  This cyst is pressing on the nerve, making Plaintiff lose feeling in his leg and foot, and could lead to amputation.

This is the result of being denied medical treatment for more than a year and a half.  Plaintiff was refused light duty status by defendant Moore until a year and two months after being incarcerated.  For all that time, Plaintiff was required to perform regular duties that certainly further damaged his knee, which continued to deteriorate with lack of treatment and regular work status.

Post-MRI, Plaintiff was still denied any care for his condition until SIS (prison internal affairs) Lieutenant Ciscerno asked Plaintiff if he ever received any care post-MRI given SIS's involvement with Plaintiff's well documented complaints regarding defendant Moore and the fact that the case had been elevated to defendant Moore's superior given defendant Moore's willful and neglectful behavior.  Plaintiff informed him "no."  Defendant Moore was finally forced to issue Plaintiff anti-inflammatories and pain killers, but it was just a month and a half before his release (a year and eight months after his initial incarceration).  Given the long delay, the external doctor/radiologist that Plaintiff saw noted that, even if they were to try and schedule a surgery at that point, Plaintiff would be released by the time it would occur. Plaintiff is now permanently crippled and is set up to receive another complex surgery on the "outside" due to the actions/inaction of Defendants.

The lack of care for his knee has caused excruciating physical, mental, and emotional pain.  Plaintiff is now unable to retain work due to the permanent crippling.  This will also delay his entrance into the Priesthood, as he now needs another even more complex surgery to try and lessen his permanent crippling.

Plaintiff has a long and virulent history of upper respiratory infections, and has had two parts of his immune system removed.  Thus, he has a perpetually low white blood cell count. Defendant Lehman flatly refused to even accept Plaintiff's BP-8 CARES Act release package, military medical records, and Veterans Affairs medical records, until after Plaintiff complained to the Warden in an email.  Plaintiff's requests for his own medical records from FCI Mendota were ignored for months.

These delays caused Plaintiff to remain incarcerated, get COVID, and almost die (as well as contribute to further permanent crippling of his knee due to delaying medical treatment even further that could have been received easily once released).

Had defendant Lehman not repeatedly refused his package, Plaintiff would have been released to the safety of home confinement before the massive COVID outbreak that occurred on August 25, 2021.  On either August 22, or August 23, Officer Galan admitted to an inmate while they were both in close quarters in his office that both his children had tested positive for

6

COVID the previous day.  Yet, Officer Galan was at work.  Two days later, everyone started

getting COVID.  This happened at the time when Plaintiff was finally called to go to mandatory

quarantine for twenty-one days prior to release under the CARES Act.

Plaintiff was put into his own cell in quarantine.  However, on August 27, a correctional

officer, defendant John Doe 1, brought the inmate who was in close contact with Officer Galan

into Plaintiff's cell.  Both Plaintiff and the other inmate protested to defendant John Doe 1, as

the other inmate had already been in quarantine for two days, and Plaintiff did not feel

comfortable being in the same cell as this inmate given the outbreak and his contact with

Officer Galan.  The other inmate had been tested for COVID the day before he was forced into

the cell with Plaintiff, but he had not yet received the results.  The next day, it was discovered

that the other inmate's test came back positive, so they took both that inmate and Plaintiff to

medical isolation and tested Plaintiff.  Plaintiff was now positive.

Plaintiff became symptomatic on August 29.  Plaintiff almost died.  He could not eat

food for three days, nor sleep.  He lost a lot of weight, and the pain was so intense in his throat

that he would wake up every time he even swallowed.  He wanted to go to the hospital, as he

could barely breathe (along with diarrhea, nausea, and all the other COVID symptoms), but he

dared not ask for fear that he would have to stay at FCI Mendota for an extended period.

Plaintiff (and everyone else) was denied showers during this outbreak for days at a time

(sometimes as long as a week).  Plaintiff was not offered care for his COVID infection (the

medical staff came and took inmates' pluses and temperatures every couple of days).

In addition to the needless and willful delays of Plaintiff's justified release package

submissions, if protocol had been followed by defendant John Doe 1, Plaintiff would not have

gotten COVID, as he would have remained alone in quarantine.  When one adds this to the pain

Plaintiff was already in because of his knee (Plaintiff could never sleep more than an hour or

two because of it), COVID became a truly harrowing and damaging experience.  If Plaintiff

had been released just a week sooner, he could have avoided the outbreak entirely (defendant

Leman caused a delay of at least two months).

Defendant Lepe, the Acting Warden, admitted to Plaintiff that his first request for

7

compassionate release in June of 2020 was "lost," and asked Plaintiff to resubmit it three months later, which contributed to Plaintiff contracting COVID and not being able to get his knee surgery before permanent damage occurred.

Plaintiff attempted to contact defendant White, who was the official in charge during most of the events described in the complaint, but was ignored or dismissed. Related to this, defendant Blocher was answering the Warden's emails for him at one point, and defendant Blocher also ignored, dismissed, or worked actively to derail Plaintiff's requests both directly and through emails. It was not until Plaintiff got other Bureau of Prisons ("BOP") employees to agree to testify to the truth about some of the corruption that acting Warden M. Lejeune (defendant White had retired) was convinced to force defendant Lehman to allow Plaintiff to finally submit his CARES Act package and attending medical records. It should not have taken over a year for Plaintiff's CARES Act package/requests for release to even be accepted for review.

Someone at FCI Mendota fraudulently back-dated a made-up denial to one of Plaintiff's initial requests for compassionate release/CARES Act release to the Regional BOP, and Plaintiff has the evidence to prove this. Plaintiff believes that defendant Blocher is the guilty party. This caused further delay in Plaintiff's release, resulting in more damages physically, mentally, and emotionally.

Plaintiff is a practicing Catholic who had been accepted to become a Priest before being wrongfully incarcerated. Before he was incarcerated, he was a daily mass communicant. The Eucharist is central to the Catholic faith and the life of any Christian, and at a bare minimum, Catholics are required to receive the Eucharist on the six "Holy Days of Obligation." Plaintiff was denied the Eucharist for over a year and four months, despite repeated pleadings. Even when there was a lull in COVID and the local parishes opened back up, FCI Mendota still failed to provide access to the Eucharist. Even in the absence of a priest being able to come to FCI Mendota and celebrate Mass, there was no reason arrangements could not have been made for at least a Eucharistic minister to bring the Eucharist to the faithful. Moreover, Plaintiff was at a "camp," the most minimal security of all institutions, so it cannot be said that this lack of

access to the Eucharist was for "security reasons."

Plaintiff's attempts to pursue legal action were knowingly subjugated at every opportunity, as inmates were continually denied access to the law library, making it impossible to construct any legal document with citations.  Every time any inmate was caught with contraband, FCI Mendota staff would punish everyone by taking away their access to the law library, closing the chapel, and shutting off the TVs (which were the only source of anti-recidivism activities for application for Earned Time Credits for application under the First Step Act).  Plaintiff argues that this is an unconstitutional extension of his time in prison because other inmates violated policy, not Plaintiff.  Additionally, the lack of access to the law library delayed Plaintiff's CARES Act submission, caused a delay in the civil complaint filing in the related case to the point where Plaintiff had to ask for an extension of time, prevented Plaintiff from submitting a proper rebuttal against the Government in his main criminal appeal, and prevented his rebuttal against the Government in his Compassionate Release motion from reaching the District Court in time (the judge ruled without Plaintiff's rebuttal).

Staff was extremely uncooperative and deliberate in their denial of these rights.  Defendant Lehman even refused to sign an *in forma pauperis* form even though Plaintiff showed her a federal rule stating that it was required.  She also refused to accept Plaintiff's CARES Act submission and BP-8.  Plaintiff initially filed a 2241 regarding these abuses, but was ultimately advised to submit a civil complaint instead.  However, the Court did issue an order forwarding Plaintiff's issues for immediate attention back to the "litigation coordinator" at FCI Mendota, who promptly ignored the order.

The entire camp population was moved "across the street" to the Mendota medium facility on April 22, 2020, in retribution for inmates exercising their administrative remedies, but under the guise of COVID.  The ice machine did not work (ice was helping subdue Plaintiff's knee pain in the absence of medical care), the air conditioning did not work more than 50% of the time, and the power kept shutting off entirely so the inmates just sat in dark sauna boxes in 120-degree desert heat because the officers were tired of getting maintenance to come and reset the breaker.  Several inmates passed out, and the inmates were only offered

showers three times a week.  Moreover, they were on lockdown twenty-three hours a day for no particular reason.  This heat, lack of ice, and dormancy swelled Plaintiff's knee to monstrous proportions while making it impossible to even try and "self-rehab."  Plaintiff and the other inmates stayed in these conditions for three full months, during the hottest months of the year, before returning to the camp in August of 2020.

When the Taft private prison closed, 160 inmates were transferred to FCI Mendota during the first height of the pandemic, despite the "freeze" on inmate transfers.  None of these inmates were tested for COVID before they were transferred or when they arrived, and they were released into the general population.  Moreover, until the outbreak mentioned above, not one inmate "in population" was ever tested for the virus at the camp, despite the website saying that they were "testing inmates every day."

What was most egregious was that when the Center for Disease Control finally came to inspect FCI Mendota in August of 2020, two days before they arrived the staff put on a show that would have made Cirque du Soleil seem lame by comparison.  Staff put up signs about the virus and how to cough, added tape to designate social distancing, separated inmates in the dining hall by mandating that two chairs be left empty between each inmate, and much more.  Along with this, staff came through with Acting Warden Lejeune and, all at once, took thirty inmates to the SHU for no good reason just so that when the CDC came through the camp housing unit it would look like there was social distancing for those who were left.  One inmate, Jake Jorgenson, was taken to the SHU solely for having nothing else but a toilet paper roll on his desk (FCI Mendota regularly failed to provide inmates with any cleaning/sanitization gear in the housing unit).

This was an obvious ploy to mask FCI Mendota's failure to follow Center for Disease Control guidelines in caring for inmates' health in the face of COVID.  This was shown clearly when, on the day of the inspection, staff told the remaining inmates to "get scarce" for the day.  They gave no guidance as to what this meant, so more than forty inmates huddled by themselves (Plaintiff included) behind the scrap heap junk pile, which was behind one of the warehouses, until the inspectors and staff were gone.  This made it impossible to expose staff

violations/health concerns to Center for Disease staff.  They conveniently brought the thirty

inmates back from SHU a week later.

   While on home confinement, Plaintiff was informed that his request to get surgery on

his knee through Veterans Affairs would not be authorized by the BOP and that he would have

to wait until his full period of incarceration was over before he could see his surgeon.  Given

the facts related to his knee and his condition (potential amputation in the absence of immediate

attention), this denial by the BOP is beyond cruel and unusual.

   Plaintiff alleges that he exhausted all administrative remedies by submitting a BP-8,

BP-9, BP-10, and BP-11 up the BOP chain of command.  Plaintiff also submitted an SF-95 to

the regional BOP counsel.  Plaintiff was given nothing but falsehoods, excuses, and deferrals

the entire way.

   Plaintiff brings a claim for deliberate indifference to his medical needs in violation of

the Eighth Amendment, a claim for violation of the Americans with Disabilities Act and the

Rehabilitation Act, a claim for violation of his First Amendment free exercise rights, a claim

for violation of his right to access the courts, a claim for violation of his Fourteenth

Amendment right to due process, and a claim for unconstitutional conditions of confinement.

While not listed separately, Plaintiff is attempting to bring claim(s) under the Federal Tort

Claims Act as well.

  **III.**  **ANALYSIS OF PLAINTIFF'S COMPLAINT**

   A. <u>Bivens</u>

   Based on the case <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388

(1971), courts have found that individuals may sue federal officials for damages for

constitutional violations under certain circumstances.  A <u>Bivens</u> action is the federal analog to

suits brought against state officials under 42 U.S.C. § 1983.  <u>Hartman v. Moore</u>, 547 U.S. 250

(2006).  The basis of a <u>Bivens</u> action is some illegal or inappropriate conduct on the part of a

federal official or agent that violates a clearly established constitutional right.  <u>Baiser v.

Department of Justice, Office of U.S. Trustee</u>, 327 F.3d 903, 909 (9th Cir. 2003).  "To state a

claim for relief under <u>Bivens</u>, a plaintiff must allege that a federal officer deprived him of his

constitutional rights."  Serra v. Lappin, 600 F.3d 1191, 1200 (9th Cir. 2010) (citing Schearz v. United States, 234 F.3d 428, 432 (9th Cir. 2000).  A Bivens claim is only available against officers in their individual capacities.  Morgan v. U.S., 323 F.3d 776, 780 n.3 (9th Cir. 2003); Vaccaro v. Dobre, 81 F.3d 854, 857 (9th Cir. 1996).  "A plaintiff must plead more than a merely negligent act by a federal official in order to state a colorable claim under *Bivens*." O'Neal v. Eu, 866 F.2d 314, 314 (9th Cir. 1988).

Plaintiff must allege facts linking each named defendant to the violation of his rights. Iqbal, 556 U.S. at 676; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  The factual allegations must be sufficient to state a plausible claim for relief, and the mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 556 U.S. at 678-79.

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-77.  In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

B. Plaintiff's Claims for Deliberate Indifference to His Serious Medical Needs in Violation of the Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent."  Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

1    Deliberate indifference is established only where the defendant *subjectively* "knows of

2  and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d

3  1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted).

4  Deliberate indifference can be established "by showing (a) a purposeful act or failure to

5  respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."

6  Jett, 439 F.3d at 1096 (citation omitted).  Civil recklessness (failure "to act in the face of an

7  unjustifiably high risk of harm that is either known or so obvious that it should be known") is

8  insufficient to establish an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825,

9  836-37 & n.5 (1994) (citations omitted).

10    A difference of opinion between an inmate and prison medical personnel—or between

11  medical professionals—regarding appropriate medical diagnosis and treatment is not enough to

12  establish a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989);

13  Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).  Additionally, "a complaint that a

14  physician has been negligent in diagnosing or treating a medical condition does not state a valid

15  claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not

16  become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at

17  106.  To establish a difference of opinion rising to the level of deliberate indifference, a

18  "plaintiff must show that the course of treatment the doctors chose was medically unacceptable

19  under the circumstances."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

20    Plaintiff alleges that upon arriving at FCI Mendota, Plaintiff explained to defendant

21  Moore that he recently had a surgery, and his knee was recently reinjured.  Plaintiff also had a

22  full metal leg-brace on his knee.  Plaintiff also had a copy of a letter from his surgeon

23  describing the surgery and Plaintiff's tender physical condition.  Despite this, defendant Moore

24  provided no care to Plaintiff for his knee.  Moreover, after Plaintiff received an MRI, which

25  showed that Plaintiff's knee was reinjured and that there was a fluid cyst that formed, defendant

26  Moore still denied care.  Defendant Moore finally provided some care after the case was

27  elevated to his superiors.

28    Based on the allegations in the complaint, the Court finds that Plaintiff sufficiently

alleges that defendant Moore was deliberately indifferent to his serious medical needs.  The Court also finds that this case does not involve a new context, because, in <u>Carlson v. Green</u>, the Supreme Court found that there was an available <u>Bivens</u> remedy for a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment.[2]  Accordingly, the claim should be allowed to proceed under <u>Bivens</u>.

Plaintiff also alleges, in a conclusory fashion, that defendants White, Lepe, Lehman, FCI Mendota, the Bureau of Prisons, Blocher, and the United States are all a party to this claim. However, the Court finds that Plaintiff fails to state a claim for deliberate indifference to his serious medical needs against any other defendant.

As to defendants White, Lepe, Lehman, and Blocher, there are no allegations suggesting that these defendants, or any other prison officials, were deliberately indifferent to Plaintiff's need to have his knee treated.  Accordingly, Plaintiff's Eighth Amendment claim that these defendants were deliberately indifferent to his serious medical needs should be dismissed.[3]

As to defendants FCI Mendota, the Bureau of Prisons, and the United States, a <u>Bivens</u> claim is only available against officers in their individual capacities.  <u>Morgan</u>, 323 F.3d at 780 n.3.  The Supreme Court has declined to extend Bivens remedies to federal agencies.  <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 486 (1994).  <u>See also Consejo de Desarrollo Economico de Mexicali</u>,

---

[2] Not all constitutional cases against federal officers for damages may proceed as <u>Bivens</u> claims.  There is a two-part test to determine whether a <u>Bivens</u> action may proceed.  <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1859-60 (2017).  A court must first consider whether the claim presents a new context from the three cases the Supreme Court has allowed to proceed under <u>Bivens</u>: <u>Bivens</u>; <u>Davis v. Passman</u>, 442 U.S. 228 (1979); and <u>Carlson v. Green</u>, 446 U.S. 14 (1980).  If the answer is no, the claim may proceed.  If the answer is yes, the court must apply a "special factors" analysis to determine whether "special factors counsel hesitation" in expanding <u>Bivens</u> to the action.  <u>Abbasi</u>, 137 S. Ct. at 1857.   The Supreme Court has summarized those three cases:

> In <i>Bivens v. Six Unknown Fed. Narcotics Agents</i>, the Court broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim. The Court subsequently extended <i>Bivens</i> to cover two additional constitutional claims: in <i>Davis v. Passman</i>, a former congressional staffer's Fifth Amendment claim of dismissal based on sex, and in <i>Carlson v. Green</i>, a federal prisoner's Eighth Amendment claim for failure to provide adequate medical treatment.

<u>Hernandez v. Mesa</u>, 140 S. Ct. 735, 741 (2020) (citations shortened).

[3] The Court notes that Plaintiff alleges that he was not offered care for his COVID infection.  However, Plaintiff does not bring a claim for deliberate indifference to serious medical needs based on this allegation, nor does he identify any responsible individuals.  The Court also notes that Plaintiff appears to allege that he refrained from telling anyone how serious his condition was because he did not want to be held at FCI Mendota longer.

1    A.C. v. United States, 482 F.3d 1157, 1173 (9th Cir. 2007) ("[A] Bivens suit against a

2    defendant in his or her official capacity would merely be another way of pleading an action

3    against the United States, which would be barred by the doctrine of sovereign immunity.

4    Therefore, the Supreme Court has refused to extend Bivens remedies from individuals to

5    agencies.") (citation omitted).  Accordingly, Plaintiff's Bivens claims against defendants FCI

6    Mendota, the Bureau of Prisons, and the United States should be dismissed.

7                        C.   Federal Tort Claims Act

8         "[T]he district courts … have exclusive jurisdiction of civil actions on claims against

9    the United States, for money damages …  for injury or loss of property, or personal injury or

10   death caused by the negligent or wrongful act or omission of any employee of the Government

11   while acting within the scope of his office or employment, under circumstances where the

12   United States, if a private person, would be liable to the claimant in accordance with the law of

13   the place where the act or omission occurred."  28 U.S.C. § 1346(b).

14        The FTCA provides that the United States shall be liable for tort claims "in the same

15   manner and to the same extent as a private individual under like circumstances."  28 U.S.C. §

16   2674.  "The Federal Tort Claims Act is a limited waiver of sovereign immunity, making the

17   Federal Government liable to the same extent as a private party for certain torts of federal

18   employees acting within the scope of their employment."  United States v. Orleans, 425 U.S.

19   807, 813 (1976).

20        The United States is not liable under the FTCA for constitutional tort claims.  FDIC v.

21   Meyer, 510 U.S. 471, 478 (1994).  The FTCA "makes the United States liable 'in the same

22   manner and to the same extent as a private individual under like circumstances.'"  United States

23   v. Olson, 546 U.S. 43, 46 (2005) (emphasis removed) (quoting 28 U.S.C. § 2674).  "The law of

24   the place in § 1346(b) has been construed to refer to the law of the state where the act or

25   omission occurred.  Thus, any duty that the United States owe[s] to plaintiff[] must be found in

26   California state tort law."  Delta Sav. Bank v. United States, 265 F.3d 1017, 1025 (9th Cir.

27   2001) (citations and internal quotation marks omitted).

28        Additionally, administrative exhaustion is a required element of a claim under the

                                         15

FTCA. <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 640 (9th Cir. 1980) ("The timely filing of an administrative claim is a jurisdictional prerequisite to the bringing of a suit under the FTCA, and, as such, should be affirmatively alleged in the complaint.") (citation omitted).

28 U.S.C. § 2675(a), provides in part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a).

This is a jurisdictional prerequisite to pursuing an FTCA claim in a district court. <u>Brady v. United States</u>, 211 F.3d 499, 502 (9th Cir. 2000) (stating that a claimant under the Federal Tort Claims Act must comply with 28 U.S.C. § 2675(a) before a district court can exert jurisdiction over the claim). "Because the requirement is jurisdictional, it 'must be strictly adhered to. This is particularly so since the FTCA waives sovereign immunity. Any such waiver must be strictly construed in favor of the United States.'" <u>Brady</u>, 211 F.3d at 502 (quoting <u>Jerves v. United States</u>, 966 F.2d 517, 521 (9th Cir.1992)).

Exhaustion under the Prison Litigation Reform Act does not satisfy the requirement to exhaust under the FTCA. <u>Compare</u> 28 C.F.R. §§ 542.13-15 (Bureau of Prisons administrative grievance procedures) <u>with</u> 28 C.F.R. §§ 543.30-32 (administrative exhaustion procedures for the FTCA within the Bureau of Prisons).

To state a claim for medical negligence or malpractice under California law, Plaintiff must establish "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4)

16

actual loss or damage resulting from the professional's negligence." Sampson v. Ukiah Valley Med. Ctr., No. 15-CV-00160-WHO, 2017 WL 2834001, at *3 (N.D. Cal., June 30, 2017) (quoting Machado v. Cal. Dep't of Corrs. and Rehab., 12-cv-6501-JSC, 2013 WL 5800380, at *5 (N.D. Cal., Oct. 28, 2013)).

As described above, Plaintiff alleges that defendant Moore provided a deficient level of care for his knee, in violation of the Eighth Amendment, and the Court has found that this claim should proceed past screening. Given that the standard for medical negligence is less stringent than the deliberate indifferent standard, and that Plaintiff alleges that he submitted an SF-95 to the regional Bureau of Prisons' counsel,[4] the Court will allow a Federal Tort Claims Act claim to proceed against defendant United States based on the treatment Plaintiff received (or failed to receive) for his knee.[5]

### D.   Americans With Disabilities Act ("ADA") and Rehabilitation Act

"Title II of the ADA and § 504 of the RA both prohibit discrimination on the basis of disability. The ADA applies only to public entities, whereas the RA proscribes discrimination in all federally-funded programs." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).

"A plaintiff bringing suit under § 504 [of the Rehabilitation Act] must show (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was

---

[4] Given Plaintiff's allegation that he filed an SF-95, the Court does not reach the issue of whether Plaintiff properly exhausted his Federal Tort Claims Act claim(s).

[5] As noted in more detail below, the Court finds that Plaintiff's Federal Tort Claims Act claim(s) against the United States fail to comply with Federal Rule of Civil Procedure 8(a). However, given that this Federal Tort Claims Act claim is related to Plaintiff's claim against defendant Moore for deliberate indifference to his serious medical needs in violation of the Eighth Amendment, that the Court has found that Plaintiff's Eighth Amendment claim against defendant Moore should proceed past screening, and that Plaintiff does mention medical malpractice in his complaint (ECF No. 13, p. 14), the Court will recommend that this Federal Tort Claims Act claim proceed past screening.

denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." Duvall v. Cty. of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001).

"The term "disability" means, with respect to an individual-- (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))."  42 U.S.C. § 12102(1)(A)-(C).

Neither the ADA nor the Rehabilitation Act provides a basis to sue government officials in their individual capacities.  Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) ("a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act.").

"To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant."  Duvall, 260 F.3d at 1138 (footnote omitted).  Deliberate indifference is the appropriate standard to apply in determining whether intentional discrimination occurred.  Id.  "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood."  Id. at 1139.  "[I]n order to meet the second element of the deliberate indifference test, a failure to act must be the result of conduct that is more than negligent, and involves an element of deliberateness."  Id.

Plaintiff also brings a claim under the ADA and the Rehabilitation Act based on the lack of medical care for his knee.  However, as discussed above, Plaintiff can't bring a claim under either section against an official in his or her individual capacity.  Moreover, "because the ADA's definition of public entity encompasses only state and local governments and their instrumentalities, it is well settled that the ADA does not provide a cause of action against the federal government."  Bosworth v. United States, 2016 WL 4168852, at *4 (C.D. Cal. Aug. 5, 2016) (citation and internal quotation marks omitted).  Accordingly, Plaintiff fails to state a claim under the ADA.

As to Plaintiff's claim under the Rehabilitation Act, Plaintiff fails to allege that he was denied a public benefit solely by reason of his disability. There are no factual allegations suggesting that defendant Moore failed to properly treat Plaintiff's knee because Plaintiff is disabled or that Plaintiff failed to receive other services based on his knee injury. Moreover, Plaintiff seeks money damages, and Congress has not waived sovereign immunity for claims under the Rehabilitation Act. Lane v. Pena, 518 U.S. 187, 192-93 (1996). Accordingly, Plaintiff fails to state a claim under the Rehabilitation Act.

### E.   Federal Rules of Civil Procedure 8(a), 18 & 20

As set forth above, Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint is not required to include detailed factual allegations, it must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). It must also contain "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

A complaint must also comply with the requirements of Federal Rules of Civil Procedure 18 and 20. Under these rules, a plaintiff may not proceed on a myriad of unrelated claims against different defendants in a single action. Fed. R. Civ. P. 18(a), 20(a)(2). "The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits…." K'napp v. California Dept. of Corrections, 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29, 2013) (quoting George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007), aff'd sub nom. K'napp v. California Dept. of Corrections & Rehabilitation, 599 Fed. App'x. 791 (9th Cir. 2015); see also Fed. R. Civ. P. 20(a)(2) ("Persons

… may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."); Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997) ("[T]he 'same transaction' requirement[] refers to similarity in the factual background of a claim.").

"Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party." Washington v. Fresno County Sheriff, 2014 WL 641137, at *2 (E.D. Cal., Feb. 18, 2014); Williams v. Madera Police Dep't, 2012 WL 3068944, at *3 (E.D. Cal., July 26, 2012) (same); Miller v. Kernan, 2017 WL 590259, at *3 (E.D. Cal., Feb. 14, 2017) (same); Solomon v. Carrasco, 2012 WL 3744666, at *3 (E.D. Cal., Aug. 28, 2012) (same).

In screening Plaintiff's previous complaint, the noted that "it appears that Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 18 and 20," and provided Plaintiff with applicable legal standards.  (ECF No. 12, p. 5).  Despite this, Plaintiff appears to bring every complaint he has regarding his treatment while he was in prison, including claims based on: a lack of medical care for his knee; the failure to properly/timely process his CARES Act release package; denial of access to courts; exposure of Plaintiff to COVID in violation of protocol and other allegedly unconstitutional conditions of confinement; and denial of the Eucharist, which allegedly violated his religious rights.

Given that Plaintiff's complaint violates Rules 18 and 20, the Court only screened Plaintiff's first claim based on denial of medical care and the related claims.  Plaintiff's other claims involve different defendants and different transactions/occurrences.  Accordingly, the Court finds that the remainder of Plaintiff's claims belong in different lawsuit(s).

Plaintiff does attempt to connect at least some of his claims by listing Moore as a defendant in several claims, including his due process claim and his claim based on allegedly unconstitutional conditions of confinement.  However, there are no factual allegations

suggesting that defendant Moore was responsible for these violations.

To the extent Plaintiff alleges an FTCA claim against the United States based on unrelated transactions/occurrences,[6] Plaintiff's complaint does not comply with Rule 8(a). Plaintiff's complaint is twenty-four pages and appears to include allegations stemming from when he first arrived in prison until when he was released, a period of approximately a year and eight months.  Moreover, Plaintiff sues numerous individuals, and also complains about various incidents without naming responsible individuals.  Additionally, while Plaintiff lists six separate claims and lists the United States as a defendant in each, none of his claims are for violation of the Federal Tort Claims Act.  Thus, it is not clear how many separate Federal Tort Claims Act claims Plaintiff is attempting to bring based on the conduct alleged in the complaint.

Moreover, most of the claims that Plaintiff lists are for constitutional violations, and, as the Court informed Plaintiff previously, "[t]he United States is not liable under the FTCA for constitutional tort claims."  (ECF No. 12, p. 2 n. 1).  And, Plaintiff fails to identify any California state tort law that the United States violated.  Instead, in two of the six claims, Plaintiff states that the behavior of certain defendants violated "Common Law Torts."

Based on foregoing, the Court finds that Plaintiff's FTCA claim(s) fail to comply with Rule 8(a).  Pinzon v. Jensen, 2009 WL 231164, at *2 (E.D. Cal., Jan. 30, 2009) ("It is Plaintiff's burden, not that of the court, to separately identify claims and state facts in support of each claim.").[7]

Accordingly, the Court finds that Plaintiff fails to sufficiently connect any other claims to his claims based on a lack of treatment for his knee, and will recommend that all unrelated claims be dismissed without prejudice.

\\\

---

[6] As discussed above, Plaintiff cannot bring a Bivens claim against the United States.

[7] The Court is not recommending dismissal of any of Plaintiff's potential Federal Tort Claims Act claims with prejudice.  Instead, the Court finds that Plaintiff failed to sufficiently connect his claims, despite being given an opportunity to do so.  If Plaintiff chooses to file new lawsuit(s), Plaintiff may correct the deficiencies identified by the Court regarding his Federal Tort Claims Act claims.

## IV.      CONCLUSION AND RECOMMENDATIONS

The Court has screened the First Amended Complaint and finds that Plaintiff's claim against defendant Moore for deliberate indifference to his serious medical needs in violation of the Eighth Amendment and Plaintiff's Federal Tort Claims Act claim against the United States based on the treatment Plaintiff received (or failed to receive) for his knee should proceed past screening.  The Court also finds that Plaintiff's ADA and Rehabilitation Act claims should be dismissed with prejudice, that Plaintiff's <u>Bivens</u> claims against defendants White, Lepe, Lehman, Blocher, FCI Mendota, and the Bureau of Prisons based on the treatment Plaintiff received (or failed to receive) for his knee should be dismissed with prejudice, and that all other claims should be dismissed without prejudice to Plaintiff bringing them in separate lawsuit(s).

The Court will not recommend that further leave to amend be granted.  In the Court's prior screening order, the Court identified deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff with an opportunity to amend his complaint.  Plaintiff filed his First Amended Complaint with the benefit of the Court's screening order.  While Plaintiff cured some of the deficiencies identified by the Court in the Court's prior screening order, it appears that further leave to amend would be futile.[8]

In his objections, Plaintiff may ask the Court to sever his unrelated claims into separate case(s) instead of dismissing them.  If he does so, Plaintiff should clearly identify the subject matter, the related issues, and the defendants he wants severed into separate case(s).

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

---

[8] The Court notes that on March 21, 2022, Plaintiff filed a Second Amended Complaint.  (ECF No. 17).  However, Plaintiff did not file a motion for leave to amend.  If Plaintiff wants to amend his complaint, he is required to file a motion for leave to amend.  Fed. R. Civ. P. 15(a)(2) ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.").  Moreover, the Court has reviewed Plaintiff's Second Amended Complaint, and while Plaintiff attempts to address some of the issues identified above, he does not cure the major defects.  That is, Plaintiff still does not connect anyone other than defendant Moore to his claim for deliberate indifference to his serious medical needs, Plaintiff's complaint still appears to include allegations stemming from when he first arrived in prison until he was released, Plaintiff still sues numerous individual based on unrelated transactions/occurrences, Plaintiff still complains about various incidents without naming responsible individuals, Plaintiff still does not list any separate FTCA claims (although it appears he is attempting to bring at least six separate FTCA claims), and Plaintiff still does not identify what conduct in the complaint violates which California state tort law(s).  Thus, leave to amend would be futile.
The Court will take no further action on Plaintiff's Second Amended Complaint.

1. This case proceed on Plaintiff's claim against defendant Moore for deliberate indifference to his serious medical needs in violation of the Eighth Amendment and Plaintiff's Federal Tort Claims Act claim against the United States based on the treatment Plaintiff received (or failed to receive) for his knee;

2. Plaintiff's ADA and Rehabilitation Act claims be dismissed with prejudice;

3. Plaintiff's Bivens claims against defendants White, Lepe, Lehman, Blocher, FCI Mendota, and the Bureau of Prisons based on the treatment Plaintiff received (or failed to receive) for his knee be dismissed with prejudice and without leave to amend; and

4. All other claims be dismissed without prejudice to Plaintiff bringing them in separate lawsuit(s) and without leave to amend.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 22, 2022**                    /s/ _Erica P. Grosjean_
                                              UNITED STATES MAGISTRATE JUDGE