1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARK A. GELAZELA,

         Plaintiff,

    v.

UNITED STATES OF AMERICA, et al.,

         Defendants.

Case No. 1:22-cv-01540-JLT-SKO (PC)

**FINDINGS AND RECOMMENDATIONS FOLLOWING SCREENING OF PLAINTIFF'S SECOND AMENDED COMPLAINT**

**14-DAY OBJECTION PERIOD**

Plaintiff Mark Gelazela is a former federal prisoner proceeding *pro se* and *in forma pauperis* in this action.

## I.      PROCEDURAL BACKGROUND

On December 1, 2022, this action was opened following issuance of the Order Adopting Findings and Recommendations and Order Severing Claims and Directing Clerk to Open New Actions in this Court's case number 1:21-cv-01499-AWI-EPG (PC). (Doc. 2.) The operative complaint was Plaintiff's first amended complaint. (Doc. 1.)

On December 19, 2022, Plaintiff filed a document titled "Second Amended Complaint for Damages" in this action. (Doc. 12.) That same date, in another action filed following the order severing (1:22-cv-01539), Plaintiff filed a document titled "Second Amended Complaint for Damages," asserting a single Eighth Amendment threat to safety claim.

1    On January 11, 2023, this Court issued its "Order Directing Clerk of the Court to Strike

2    the Second Amended Complaint Filed December 19, 2022, in this Action and to Substitute

3    Another Pleading Filed Erroneously in Another Action." (Doc. 13.) The Order directed the Clerk

4    to substitute one pleading for another (Doc. 14 for Doc. 12), following a filing error by Plaintiff

5    resulting from a technical violation of the severing order issued by District Judge Anthony W.

6    Ishii.

7    The Court now screens Plaintiff's second amended complaint.

8    **II.    SCREENING REQUIREMENT**

9    The Court is required to screen complaints brought by prisoners seeking relief against a

10   governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

11   The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious,

12   fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant

13   who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if

14   it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal

15   theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

16   **III.   PLEADING REQUIREMENTS**

17   **A.  Federal Rule of Civil Procedure 8(a)**

18   "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

19   exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain

20   "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R.

21   Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the

22   plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal

23   quotation marks & citation omitted).

24   Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a

25   cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556

26   U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must

27   set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"

28   *Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal

1    conclusions are not. *Id.* (citing *Twombly*, 550 U.S. at 555).

2           The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of

3    any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the

4    liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal

5    theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation

6    of a civil rights complaint may not supply essential elements of the claim that were not initially

7    pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal

8    quotation marks & citation omitted), and courts "are not required to indulge unwarranted

9    inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation

10   marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not

11   sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's

12   liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

13                            **B.  Linkage and Causation**

14          Section 1983 provides a cause of action for the violation of constitutional or other federal

15   rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under

16   section 1983, a plaintiff must show a causal connection or link between the actions of the

17   defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*,

18   423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the

19   deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative

20   act, participates in another's affirmative acts, or omits to perform an act which he is legal required

21   to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740,

22   743 (9th Cir. 1978) (citation omitted).

23                            **C.  Supervisory Liability**

24          Liability may not be imposed on supervisory personnel for the actions or omissions of

25   their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g.,*

26   *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to

27   adduce evidence the named supervisory defendants "themselves acted or failed to act

28   unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v.*

                                             3

1    *C'nty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934

2    (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section

3    1983 there must be a showing of personal participation in the alleged rights deprivation: there is

4    no respondeat superior liability under section 1983").

5        Supervisors may be held liable only if they "participated in or directed the violations, or

6    knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th

7    Cir. 1989). "The requisite causal connection may be established when an official sets in motion a

8    'series of acts by others which the actor knows or reasonably should know would cause others to

9    inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Accord

10    *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on

11    inaction in the training and supervision of subordinates).

12        Supervisory liability may also exist without any personal participation if the official

13    implemented "a policy so deficient that the policy itself is a repudiation of the constitutional

14    rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942

15    F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other*

16    *grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

17        To prove liability for an action or policy, the plaintiff "must ... demonstrate that his

18    deprivation resulted from an official policy or custom established by a ... policymaker possessed

19    with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d

20    707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between

21    the defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v.*

22    *Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the

23    involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v.*

24    *Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

25    //

26    //

27    //

28    //

## IV.   DISCUSSION

### A.  Plaintiff's Second Amended Complaint[1]

Plaintiff's second amended complaint names the United States of America, Mendota FCI, the Bureau of Prisons, Warden Douglas White, Case Manager K. Lehman, and Correctional Officer Alcantor as Defendants. (Doc. 1-2.) Plaintiff seeks money damages of $10,000,000, "censure of the named parties involved (especially Lehman)," legal fees including "any fees required for the travel of witnesses," and any further relief deemed appropriate by the Court. (*Id.* at 17.)

### B.  Factual Allegations

Plaintiff contends he was fully exonerated of any wrongdoing in his criminal case. (Doc. 14 at 5.)  Plaintiff asserts, the exoneration "occurred after the verdict so this did not prevent the Plaintiff from being wrongfully incarcerated pending appeal for a new trial." (*Id.*) Plaintiff contends he was "'fresh' off crutches after surgery and was wearing a metal leg-brace" at the time he was remanded into custody. (*Id.* at 5-6.) Plaintiff asserts "[t]he parties involved in the first 'related case referenced above [*id.* at 2, referring to "SA-CV-21-1126-JWH (DFM)"]' willfully re-damaged the Plaintiff's surgical repair when 'indoctrinating' him." (*Id.* at 6.)

Plaintiff contends that upon arriving at Mendota FCI, he explained his surgery to Dr. Thomas Moore, but Moore accused him of faking his injury. (Doc. 14 at 6.) Plaintiff contends he was at that time "a 50% service-connected, disabled Marine Corps veteran," having honorably served for ten years, with well documented knee issues. (*Id.*) He further contends his knee issue was "documented by those in the criminal administration system" before his arrival at Mendota FCI. (*Id.*) In addition to wearing the full-length metal knee brace, Plaintiff possessed "surgical internal knee photos from the actual knee surgery," and "a copy of a letter from his world-

---

[1] The Court notes that in his "Closing," Plaintiff "makes a plea to the Court for the appointment of legal counsel." (Doc. 14 at 18.) Plaintiff is advised his request must be submitted as a motion. *See* this Court's Local Rules 230(b) [Notice, Motion, Brief and Evidence] and 230(*l*) ("All motions, except motions to dismiss for lack of prosecution … shall be submitted upon the record without oral argument unless otherwise ordered by the Court. Such motions need not be noticed on the motion calendar").

1 renown, high-profile surgeon describing the surgery and the Plaintiff's tender physical condition"

2 indicating mobility restrictions. (*Id.*)

3       Plaintiff asserts that over the one and a half years, Dr. Moore willfully neglected to

4 provide "any care to the Plaintiff's knee" and Defendants did nothing to correct the situation

5 despite having knowledge of it. (Doc. 14 at 6.) Moore refused to put Plaintiff on limited duty

6 status, thus threatening Plaintiff's safety, and ignored Plaintiff's requests to be sent for an MRI

7 "to 're-prove'" his knee injury as mandated. (*Id.*) Plaintiff also asserts Moore refused to issue the

8 necessary form for an additional form-fitting specialized knee brace after three months as ordered

9 by the surgeon. (*Id.*) Plaintiff further contends Moore refused to issue Ibuprofen. (*Id.*) Plaintiff

10 contends he had "no choice but to send the brace in anyway but to 'unit team', hoping they would

11 exercise clemency where Moore would not." (*Id.*) He asserts the brace was "thrown in the trash"

12 although "Officer Goodrich, the mail room officer" told Plaintiff it was returned. (*Id.*) The brace

13 was not returned and there is no record of it being returned. (*Id.*)

14       Plaintiff contends he completed "dozens of Medical 'cop-outs' requesting care and other

15 administrative actions that the Defendants were aware of." (Doc. 14 at 7.) He did not receive an

16 MRI until May 2021, and received the MRI results in June 2021—one and a half years after

17 incarceration. (*Id.*) The MRI confirmed his knee had been reinjured, "fully torn ACL and both

18 meniscus being torn," and it also revealed a cyst had formed, pressing on the nerve. (*Id.*) Plaintiff

19 lost feeling in his leg and foot. (*Id.*) Moore refused to place Plaintiff on light duty status for

20 fourteen months. (*Id.*) Plaintiff contends that having to perform regular duties during that period

21 "certainly further damaged his knee which continued to deteriorate badly." (*Id.*)

22       Post MRI, Plaintiff asserts he was denied any care for his condition until a lieutenant with

23 prison internal affairs asked Plaintiff whether he had received any post MRI care. (Doc. 14 at 7.)

24 Plaintiff replied that he had not received post MRI care. (*Id.*) Plaintiff contends Moore was

25 "finally forced to minimally issue" anti-inflammatories and pain medications, but only a month

26 and a half prior to his release. (*Id.*) Due to the long delay, "the external doctor/radiologist" who

27 saw Plaintiff advised that surgery could not be scheduled or performed before Plaintiff's

28 anticipated release. (*Id.*) He claims "[a]ll of this was a threat to the Plaintiff's safety." (*Id.*)

Plaintiff contends he is "now permanently crippled despite having eventually received another complex surgery on the 'outside.'" (*Id.*)

Plaintiff next contends Acting Warden C. Lepe admitted to Plaintiff in an email that his request for compassionate release in April 2020 had been lost. (Doc. 14 at 7.) Plaintiff resubmitted the request, but the delay contributed to Plaintiff contracting COVID. (*Id.*) As a result, Plaintiff was unable to get knee surgery "before permanent damage set in." (*Id.*) Plaintiff contends "White was made aware of this delay" but failed to expedite or address the resubmitted request for compassionate release. (*Id.* at 7-8.) Plaintiff asserts that action "was a threat to the Plaintiff's safety and it also makes the U.S. liable given that this is violation of a 'strict liability tort' where the specific action(s) of the Defendants resulted in damage regardless of their intent; a Prima Facie tort (damaging on its face) and negligence (gross and negligent infliction of emotional distress) under the FTCA/CTCA." (*Id.* at 8.)

Plaintiff states that Warden White was the "official in charge during" these events. (Doc. 14 at 8.) Plaintiff tried to contact White several times, but his efforts were ignored or dismissed. (*Id.*) Plaintiff alleges D. Blocher answered the Warden's emails "for him at least in part" but he, too, "ignored, dismissed or worked actively to derail" the requests. (*Id.*)

Plaintiff "has a long and virulent history of upper respiratory infections," has had "part of his immune system removed" and has a "perpetually low white blood cell count." (Doc. 14 at 8.) He states Lehman "flatly refused to even accept" his "BP-8, CARES Act release package" and military records until Plaintiff complained to the Warden. (*Id.*) He contends he "pressed other BOP employees to agree to testify to the truth about some of the corruption that acting Warden M. Lejeune (White had retired at some point) was then 'convinced' (email dated 07/12/21) to force Lehman to allow the Plaintiff to finally submit" his CARES Act package and related materials. (*Id.* at 8-9.) Plaintiff states it should not have taken over a year to have the package accepted for review. (*Id.* at 9.) He contends "the damages caused are irreparable, and it was a threat to the Plaintiff's safety, and it also makes the U.S. liable under the FTCA/CTCA given that this is violation of a 'intentional tort' (intentional infliction of emotional distress), 'strict liability tort' where the specific action(s) of the Defendants resulted in damage regardless of their intent; a

Prima Facie tort (damaging on its face) and negligence (gross, negligent infliction of emotional distress and willful misconduct)." (*Id*.)

Plaintiff next contends someone from Mendota FCI "fraudulently back-dated a made-up, September 8th, 2020, denial to the Regional BOP regarding one of [his] initial requests for compassionate release" and Plaintiff has evidence to prove it. (Doc. 14 at 9.) He asserts "three aforementioned Mendota staff members have stated they are willing to testify to this" because Plaintiff was "not the only one 'fed up' with the corruption at Mendota FCI." (*Id*.)

Plaintiff contends that his "attempts to pursue legal action were knowingly subjugated at every opportunity" by White. (Doc. 14 at 9.) Access to the law library, chapel and programs were common when an inmate was "caught with 'contraband.'" (*Id*.) Courses shown on the televisions could not be completed because the televisions were "shut off," resulting in an inability to access Earned Time Credits (ETC) and extending sentences. (*Id*. at 10.) He contends the "denial of access to the law library and denial of ETC's extended" his custody unnecessarily. (*Id*.) It "contributed to the Plaintiff's threat to safety for the reasons explained herein, and it makes the U.S. liable under the FTCA/CTCA given that this is violation of a 'intentional tort' (personal injury, intentional infliction of emotional distress), 'strict liability tort' where the specific action(s) of the Defendants resulted in damage regardless of their intent; a Prima Facie tort (damaging on its face) and negligence (gross, negligent infliction of emotional distress and willful misconduct)." (*Id*.)

Plaintiff alleges White "and the other Defendants were extremely uncooperative and deliberate in their causing threats to the Plaintiff's safety." (Doc. 14 at 10.) He states "Lehman even refused to sign something as simple an 'in Forma Pauperis' form" and refused to accept Plaintiff's BP-8 CARES Act submission. (*Id*.) Plaintiff contends that in this Court's case number 1:21-cv-00002, when the Court issued "an Order 'expediting'" his "petition and 'emergency motion to compel,'" White "and the Defendants" ignored the Court's order. (*Id*. at 10-11.) He contends this was a threat to his "safety and it also makes the U.S. liable under the FTCA/CTCA given that this is violation of a 'intentional tort' (personal injury, intentional infliction of emotional distress), 'strict liability tort' where the specific action(s) of the Defendants resulted in

damage regardless of their intent; a Prima Facie tort (damaging on its face) and negligence (gross and willful misconduct)." (*Id*. at 11.)

Plaintiff contends "[a]ll of these delays" caused his continued incarceration, contraction of COVID and near death. (Doc. 14 at 11.) He alleges that had Lehman processed his CARES Act package, he "would have been released to the safety of Home Confinement" before a massive outbreak on August 25, 2021. (*Id*.) Officer Galan admitted to another inmate that his children had tested positive for COVID, but he continued to work. (*Id*.) Plaintiff contends that two days later "everyone started getting COVID." (*Id*.) At the same time, he was "finally called to go to mandatory quarantine for 21 days prior to release under the CARES Act." (*Id*.) He contends this too "was a Threat to Safety of the Plaintiff in violation of his constitutional rights, and it also makes the U.S. liable under the FTCA/CTCA given that this is violation of a 'intentional tort' (personal injury, intentional infliction of emotional distress), 'strict liability tort' where the specific action(s) of the Defendants resulted in damage regardless of their intent; a Prima Facie tort (damaging on its face) and negligence (gross, negligent infliction of emotional distress and willful misconduct)." (*Id*. at 11-12.) Plaintiff contends that while in quarantine, Officer Alcantor brought another inmate into Plaintiff's cell over the objection of Plaintiff and the other inmate. (*Id*. at 12.) The other inmate had been tested for COVID, having been exposed by Officer Galan, but had not yet received the results. (*Id*.) When that inmate's results came back positive, both the inmate and Plaintiff were moved to medical isolation, where Plaintiff tested positive. (*Id*.) Plaintiff asserts he "almost died, could not eat food for three days, nor sleep; he lost a lot of weight, and the pain was so intense in his throat that he woke up every time he swallowed …." (*Id*.) Plaintiff states he wished to go to the hospital for treatment "but dared not ask for fear that he would have to stay at Mendota for an extended period and also given all the abuses there." (*Id*.)

Plaintiff contends that had Alcantor followed policy, he would not have contracted COVID and would have remained alone in quarantine because the other inmate would not have been placed in Plaintiff's cell before learning the results of the COVID test. (Doc. 14 at 12.) Plaintiff contends the COVID outbreak "spread like wildfire" and "became a truly harrowing and

1   damaging experience for weeks on end." (*Id.* at 12-13.) He asserts that had he been released just a

2   week sooner, he could have avoided the outbreak entirely. (*Id.* at 13.) Instead, due to Defendants'

3   willful and needless delays, his CARES Act package was delayed "for at least two months." (*Id.*)

4   This "was a Threat to Safety of the Plaintiff in violation of his constitutional rights, and it also

5   makes the U.S. liable under the FTCA/CTCA given that this is violation of a 'intentional tort'

6   (personal injury, intentional infliction of emotional distress), 'strict liability tort' where the

7   specific action(s) of the Defendants resulted in damage regardless of their intent; a Prima Facie

8   tort (damaging on its face) and negligence (gross, negligent infliction of emotional distress and

9   willful misconduct)." (*Id.*)

10      Plaintiff next contends that on April 22, 2020, White ordered that the entire population be

11   "moved 'across the street' to the Mendota medium facility … in retribution for inmates exercising

12   their administrative remedies but under the 'guise' of COVID." (Doc. 14 at 13.) At that facility,

13   the ice machine did not work and Plaintiff was unable to use ice for his knee pain. (*Id.*) Plaintiff

14   also contends the "air conditioning didn't work more than 50% of the time," power shut off

15   entirely on occasion, and inmates "sat in what became dark sauna boxes in 120 degrees desert

16   heat because officers were tired of getting maintenance to come and reset the 'breaker.'" (*Id.*) The

17   lack of ice and the heat caused Plaintiff's knee to swell "to monstrous proportions while making it

18   impossible to even try and 'self-rehab." (*Id.*) Plaintiff and his fellow inmates were subjected to

19   these conditions for three months before being returned "to the camp" in August 2020. (*Id.*) He

20   contends that "[a]ll of the above was a Threat to Safety of the Plaintiff by the Defendants in

21   violation of his constitutional rights, and it also makes the U.S. liable under the FTCA/CTCA

22   given that this is violation of a 'intentional tort' (personal injury, intentional infliction of

23   emotional distress), 'strict liability tort' where the specific action(s) of the Defendants resulted in

24   damage regardless of their intent; a Prima Facie tort (damaging on its face) and negligence (gross,

25   negligent infliction of emotional distress and willful misconduct)." (*Id.* at 13-14.)

26      Plaintiff next asserts that when the "Taft private prison closed, 160 inmates were

27   transferred to Mendota" at the height of the pandemic and none were tested for COVID before

28   being transferred. (Doc. 14 at 14.) The inmates' release into general population exposed

everyone. (*Id*.) Plaintiff contends that when "CDC finally came through to inspect Mendota sometime in mid-August of 2020, and two days before they arrived, White and the Defendants (not including Alcantor) 'put on a show' that would have made 'Cirque du Soliel' seem lame by comparison." (*Id*.) They put up signs about the virus "and how to cough," added tape "to designate social distancing" and separated inmates by a vacant chair in the dining hall. (*Id*.) Plaintiff asserts thirty inmates were taken "to the SHU for no good reason just so that when CDC came through the camp housing unit it would look like there was social distancing for those who were left." (*Id*.) Plaintiff alleges this was "an obvious ploy to make Mendota's neglect of following CDC guidelines" seem non-existent. (*Id*.) He contends on the day of the inspection, White and his staff had forty inmates huddled behind a "scrap heap junk pile" behind a warehouse "until the Inspectors and Mendota staff were gone," making it "impossible to expose the Defendant's violations/health concerns to the CDC staff." (*Id*. at 14-15.) Plaintiff alleges this "was a Threat to Safety of the Plaintiff and against his constitutional rights and it also makes the U.S. liable under the FTCA/CTCA given that this is violation of a 'intentional tort' (personal injury, intentional infliction of emotional distress), 'strict liability tort' where the specific action(s) of the Defendants resulted in damage regardless of their intent; a Prima Facie tort (damaging on its face) and negligence (gross, negligent infliction of emotional distress and willful misconduct) and is such obvious corruption, breech of protocol, safety and policy that it should concern everyone involved." (*Id*. at 15.)

### C. Plaintiff's Claims

Plaintiff identifies his claim as "CLAIM VI: Threat to Safety." (Doc. 14 at 15.) He contends he was continually denied care for his knee, was placed in situations that further damaged his knee, and was constantly subjected to unsanitary and dangerous living conditions. (*Id*.) He was "needlessly exposed to COVID and his knee was needlessly crippled." (*Id*.) Plaintiff maintains "[t]hese are violations of 'torts' … under the FTCA/CTCA and violations of Plaintiff's 8th Amendment constitutional rights." (*Id*.) He contends it is beyond dispute "that any of this was done for penal reasons." (*Id*.) Plaintiff "got extremely sick and almost died, and he was offered no care for his COVID infection" by the Defendants. (*Id*. at 16.) Plaintiff also contends "had the

1    Defendant's acted to ensure that the Plaintiff was not left on 'regular duty' whereby threatening

2    his safety, he would not now be permanently crippled." (*Id*.)

3         Plaintiff alleges he suffered "physical, emotional and mental" damages. (Doc. 14 at 16.)

4    He contends the "Defendants were certainly aware that the power, AC, and ice were not working

5    in the building C1 incident, and given that Mendota is in the middle of the desert and it was the

6    height of the summer, there is no chance they can claim ignorance to the potential for harm." (*Id*.)

7    He states Defendants made an intentional decision regarding his confinement, placed him at

8    substantial risk of suffering serious harm, and Defendants did not take reasonable available

9    measures to abate the risk, thereby causing him injury. (*Id*.)

10        Plaintiff contends Defendants "are all party to this claim (the U.S. for its violation of the

11   'torts' … under the FTCA/CTCA and the other Defendants for violating the Plaintiff's

12   constitutional rights), as they all had knowledge of, and actively participated in the threats to the

13   safety of the Plaintiff as outlined in this complaint." (Doc. 14 at 16-17.)

14                          **D.  Analysis**

15                          **1.  Bivens Claims**

16        Individuals may sue federal officials for damages for constitutional violations under

17   certain circumstances. *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). A

18   *Bivens* action is the federal analog to suits brought against state officials under 42 U.S.C. § 1983.

19   *Hartman v. Moore*, 547 U.S. 250 (2006). The basis of a *Bivens* action is some illegal or

20   inappropriate conduct on the part of a federal official or agent that violates a clearly established

21   constitutional right. *Baiser v. Department of Justice, Office of U.S. Trustee*, 327 F.3d 903, 909

22   (9th Cir. 2003). Actions under *Bivens* and actions under § 1983 "are identical save for the

23   replacement of a state actor under § 1983 by a federal actor under *Bivens*." *Van Strum v. Lawn*,

24   940 F.2d 406, 409 (9th Cir. 1991).

25        "To state a claim for relief under *Bivens*, a plaintiff must allege that a federal officer

26   deprived him of his constitutional rights." *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010)

27   (citing *Schearz v. United States*, 234 F.3d 428, 432 (9th Cir. 2000)). A *Bivens* claim is only

28   available against officers in their individual capacities. *Morgan v. U.S.*, 323 F.3d 776, 780 n.3

1    (9th Cir. 2003); *Vaccaro v. Dobre*, 81 F.3d 854, 857 (9th Cir. 1996).

2        "A plaintiff must plead more than a merely negligent act by a federal official in order to

3    state a colorable claim under *Bivens*." *O'Neal v. Eu*, 866 F.2d 314, 314 (9th Cir. 1988). Plaintiff

4    must allege facts linking each named defendant to the violation of his rights. *Iqbal*, 556 U.S. at

5    676. The factual allegations must be sufficient to state a plausible claim for relief, and the mere

6    possibility of misconduct falls short of meeting this plausibility standard. *Id.*, at 678-79. A

7    plaintiff must also demonstrate that each named defendant personally participated in the

8    deprivation of his rights. *Id.*, at 676-77. In other words, there must be an actual connection or link

9    between the actions of the defendants and the deprivation alleged to have been suffered by

10   Plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

11                    **2.  Eighth Amendment: Threat to Safety/Failure to Protect**

12       A federal inmate can bring suit for money damages against federal prison officials under

13   the Eighth Amendment. *Carlson v. Green*, 446 U.S. 14, 24 (1980). The Eighth Amendment

14   protects prisoners from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d

15   1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison

16   officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal

17   safety. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). Prison officials have a duty "to take

18   reasonable measures to guarantee the safety of inmates, which has been interpreted to include a

19   duty to protect prisoners." *Labatad v. Corrections Corp. of America,* 714 F.3d 1155, 1160 (9th

20   Cir. 2013) (citing *Farmer*, 511 U.S. at 832-33 & *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th

21   Cir. 2005)). To establish a violation of this duty, a prisoner must "show that the officials acted

22   with deliberate indifference to threat of serious harm or injury to an inmate." *Labatad*, 714 F.3d at

23   1160 (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

24       A failure to protect claim under the Eighth Amendment requires a showing that "the

25   official [knew] of and disregard[ed] an excessive risk to inmate ... safety." *Farmer*, 511 U.S. at

26   837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of

27   fact subject to demonstration in the usual ways, including inference from circumstantial evidence,

28   ... and a factfinder may conclude that a prison official knew of a substantial risk from the very

1   fact that the risk was obvious." *Id.* at 842 (citations omitted). The duty to protect a prisoner from

2   serious harm requires that prison officials take reasonable measures to guarantee the safety and

3   well-being of the prisoner. *Id*. at 832-33; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). As

4   "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," plaintiff

5   must allege facts showing the defendant acted with a "sufficiently culpable state of mind."

6   *Wilson*, 501 U.S. 294, 297 (1991) (internal quotations marks, emphasis & citations omitted).

7                                          **a.      Defendant White**

8          Plaintiff alleges that "White's negligence" permitted Taft inmates to be moved into the

9   FCI Mendota population without COVID testing, needlessly exposing all present. (Doc. 14 at 14.)

10  Plaintiff contends White was involved in "put[ting] on a show" in August 2020 when Centers for

11  Disease Control (CDC) staff visited the prison facility. (*Id*.) Plaintiff asserts "White and the

12  Defendants" suddenly placed COVID signage and implemented social distancing measures. (*Id*.)

13  On the day of the inspection, in "an obvious ploy to mask Mendota's neglect of following CDC

14  guidelines," Plaintiff contends White directed his staff to "tell the remaining inmates in the

15  housing unit to 'get scarce' for the day and gave no guidance what this meant, so more than forty

16  inmates literally huddled by themselves (Plaintiff included) behind the scrap heap junk pile

17  behind one of the warehouses" until the inspection was complete. (*Id*. at 14-15.)

18                                         **b.      Defendant Lehman**

19         Plaintiff contends Defendant Lehman refused to accept Plaintiff's BP-8 CARES Act

20  release package "until two months after the Plaintiff complained to the Warden" in emails dates

21  May 7 and July 12, 2021. (Doc. 14 at 8.) Plaintiff contends this delay caused him irreparable

22  damage and "was a threat to" his safety. (*Id*. at 8-9.) Plaintiff states Lehman "refused to sign

23  something as simple as an 'in Forma Pauperis' form, despite being shown the Federal Rules of

24  Criminal Procedure and the requirement that "the warden or other appropriate officer of the

25  institution" do so. (*Id*. at 10.) Plaintiff alleges that had Lehman "not repeatedly refused" his

26  CARES Act release package, he "would have been released to the safety of Home Confinement

27  before the massive COVID outbreak that occurred … on August 25, 2021." (*Id*. at 11.) Plaintiff

28  asserts Lehman was involved in bringing "the ENTIRE CAMP over to the Quarantine unit (CI)

1  were Plaintiff was, so it then became one massive isolation unit" after the COVID outbreak. (*Id*.

2  at 12-13.)

3                                  **c.       Defendant Alcantor**

4         Plaintiff contends that Alcantor moved a quarantined "Inmate X" into Plaintiff's cell when

5  that inmate's COVID test results were not yet known. (Doc. 14 at 12.) Plaintiff asserts if Alcantor

6  had followed protocol, Plaintiff would have remained celled alone in quarantine and would have

7  avoided coming into contact with "Inmate X," where the inmate received a positive COVID test

8  result the day after being housed with Plaintiff. (*Id*.) Plaintiff tested positive days later. (*Id*.)

9  Plaintiff alleges he could not eat or sleep, lost weight, endured intense throat pain, and nearly died

10 as a result. (*Id*.)

11            **3.   Plaintiff's Threat to Safety/Failure to Protect Claims Present
                     Claims in a New *Bivens* Context and Should Be Dismissed**

12

13        This Court must first determine whether Plaintiff's Eighth Amendment threat to

14 safety/failure to protect claims against Defendants White, Lehman and Alcantor are actionable

15 under *Bivens*. As addressed below, this determination requires the Court to decide whether the

16 claims arise in a new *Bivens* context, and if so, whether special factors counsel against extending

17 the *Bivens* remedy to that context.

18        To date, the Supreme Court has only recognized a *Bivens* remedy in the context of the

19 Fourth, Fifth, and Eighth Amendments. *See Bivens*, 403 U.S. 388 (Fourth Amendment prohibition

20 against unreasonable searches and seizures); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth

21 Amendment gender-discrimination); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment

22 Cruel and Unusual Punishments Clause for failure to provide adequate medical treatment). The

23 Supreme Court has recently made clear that "expanding the *Bivens* remedy is now a disfavored

24 judicial activity," and has "consistently refused to extend *Bivens* to any new context or new

25 category of defendants. *Ziglar v. Abbasi*, —— U.S. ——, 137 S. Ct. 1843, 1857 (2017) (citations

26 omitted); *Egbert v. Boule*, —— U.S. ——, 142 S. Ct. 1793, 1797 (2022) (The Court reiterated that

27 "a cause of action under Bivens is 'a disfavored judicial activity'").

28        If a claim presents a new context in *Bivens*, the court must consider whether there are

                                              15

special factors counseling against extension of *Bivens* into this area. *Abassi*, 137 S. Ct. at 1857. The Supreme Court's precedents "now make clear that a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id*. Thus, "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1857–58. This requires the court to assess the impact on governmental operations system-wide, including the burdens on government employees who are sued personally, as well as the projected costs and consequences to the government itself. *Id*. at 1858. In addition, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id*.

Traditionally, courts have applied a two-part test to determine the propriety of extending a *Bivens* cause of action. The Court first examined whether the claim arises in a "new context" or involves a "new category of defendants." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). If the claim does indeed arise in a new context, the Court next assessed whether there exists any "special factors counselling hesitation in the absence of affirmative action by Congress." *Abassi*, 137 S. Ct. at 1857 (internal quotations omitted). The Supreme Court recently reformulated this test.

In *Egbert v. Boule*, 142 S. Ct. at 1803, the Supreme Court determined that these two steps can be distilled to one single inquiry: "whether there is any reason to think that Congress might be better equipped to create a damages remedy." The Court stated that if there is even one rational reason to defer to Congress to afford a remedy, "a court may not recognize a *Bivens* remedy." *Id*. The Court concluded that a rational reason for deference to Congress will exist "in most every case." *Id*.

Recently, the Ninth Circuit held that "'[u]nder *Egbert*, rarely if ever is the Judiciary equally suited as Congress to extend *Bivens* even modestly. That is because '[t]he creation of a new cause of action is inherently legislative, not adjudicative.' Essentially then, future extensions of *Bivens* are dead on arrival." *Harper v. Nedd*, 71 F.4th 1181, 1187 (9th Cir. 2023) (internal

1  citations omitted).

2  Finally, the presence of an alternative remedial structure counsels against extending

3  *Bivens* to a new cause of action. "Under *Egbert*, a court may not fashion a *Bivens* remedy if

4  Congress has already provided, or has authorized the Executive to provide, an alternative

5  remedial structure." *Harper*, 71 F.4th at 1188 (internal citations & quotations omitted). The Court

6  may not even determine the adequacy of the alternative remedy, as this too is a task left to

7  Congress. *Egbert*, 142 S. Ct. at 1807. Indeed, "[s]o long as Congress or the Executive has created

8  a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts

9  cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* This remains true

10 "even if a court independently concludes that the Government's procedures are 'not as effective as

11 an individual damages remedy.'" *Id.* (quoting *Bush v. Lucas*, 462 U.S. 367, 372 (1983)).

12 As noted above, Plaintiff asserts an Eighth Amendment failure to protect claim against

13 three individual Defendants: (1) Defendant White for failing to protect Plaintiff from the

14 substantial risk presented by COVID by allowing inmates transferred from Taft to Mendota to be

15 housed without COVID testing; (2) Defendant Lehman for a failing to protect Plaintiff by

16 repeatedly refusing to accept Plaintiff's CARES Act package and for creating a "massive

17 isolation unit" following a COVID outbreak; and (3) Defendant Alcantor for breaking quarantine

18 protocol and failing to protect Plaintiff from contracting the virus after a COVID-positive inmate

19 was placed in Plaintiff's cell. All three of these situations present a new *Bivens* context because

20 Plaintiff's claims are unlike *Bivens* (Fourth Amendment prohibition against unreasonable

21 searches and seizures), *Davis* (Fifth Amendment gender-discrimination), or *Carlson*. While

22 *Carlson* involved an actionable Eighth Amendment failure to provide adequate medical care

23 claim, Plaintiff's claims assert a failure to protect or threat to safety. Thus, this Court must

24 consider whether there is any reason to believe that Congress might be better equipped to create a

25 damages remedy.

26 The Ninth Circuit recently held an Eighth Amendment failure to protect claim represents a

27 new *Bivens* context. *Chambers v. Herrera*, --- F.4th ---, 2023 WL 5211040, at *4 (9th Cir. Aug.

28 15, 2023). The plaintiff in *Chambers* contended his Eighth Amendment failure to protect claim

did not represent a new *Bivens* context because it was like the existing *Bivens* actions in *Farmer*, 511 U.S. 825, and *Carlson*, 446 U.S. 14. *Id*. The Ninth Circuit found that Chambers' claim differed from *Carlson* and represented a new *Bivens* context. *Id*. That Court held, in relevant part:

> [T]he mechanism of injury in Chambers' claim is different than in *Carlson*. *Carlson* relied on failure to provide adequate medical treatment, while this claim relies on a failure to protect Chambers against Officer Herrera. No case has extended *Bivens* to claims that BOP employees violated the Eighth Amendment by failing to protect an inmate from other staff members. *Carlson* also concerned specific actions taken against an individual inmate, whereas Chambers' failure to protect claim would impose *Bivens* liability for inaction."

*Id*.

Further, the Ninth Circuit held "extending *Bivens* here would create a broad new source of liability for prison officials" and that "alone is enough to place it beyond the purview of the courts to create a remedy, because courts may not 'independently assess the costs and benefits of implying a cause of action.'" *Chambers* 2023 WL 5211040, at *5 (citation omitted). The Ninth Circuit held "the PLRA gives authority to the BOP, as part of the Executive Branch, to structure grievance procedures. Therefore, just as we declined to second-guess Congress's establishment of remedies under the Civil Reform Act in *Harper*, we decline to second-guess the remedial structure as set forth by the BOP here." *Id*. (citations omitted). Finally, in determining Chambers had no *Bivens* claim, the Ninth Circuit stated,

> any decision by Congress or the Executive not to create an express Eighth Amendment failure to protect cause of action for prisoners, where it has legislated, suggests that they have decided against creating such an action. These reasons constitute *any* rational reason (even one) to think that Congress is better suited to weigh the costs and benefits of allowing a damages action to proceed.

*Id*. at *5 (emphasis in original; citation & internal quotation marks omitted).

Here, as in *Chambers*, Plaintiff's Eighth Amendment failure to protect claims against Defendants White, Lehman and Alcantor differ from *Carlson* because they do not concern a failure to provide adequate medical treatment. *Chambers*, 2023 WL 5211040, at *4. No case has extended *Bivens* to claims asserting a failure to protect against federal correctional officers. *Id*. As noted by the Ninth Circuit, such an extension "would create a broad new source of liability for

prison officials," placing it beyond this Court's purview. *Id*. at *5. Plaintiff's remedy lies with the BOP's grievance procedure and this Court will not "second-guess" that remedy. *Id*. Because Congress has not created "an express Eighth Amendment failure to protect cause of action for prisoners," this Court may not create one. *Id*.

As Plaintiff's claims arise in a new *Bivens* context and because Congress is better suited to create an Eighth Amendment failure to protect cause of action but has not done so, the Court will recommend that this these claims be dismissed with prejudice for Plaintiff's failure to state a claim. *Chambers*, 2023 WL 5211040, at *4-5. Granting Plaintiff leave to amend these claims would be futile for the reasons discussed above. *Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile").

### 4.  A *Bivens* Action Cannot Lie Against the United States, Mendota FCI or the Bureau of Prisons

A *Bivens* claim is only available against federal officers in their individual capacities. *Morgan*, 323 F.3d at 780 n.3. The Supreme Court has declined to extend *Bivens* remedies to federal agencies. *F.D.I.C. v. Meyer*, 510 U.S. at 486; *see also Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) ("a *Bivens* suit against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity. Therefore, the Supreme Court has refused to extend *Bivens* remedies from individuals to agencies") (citation omitted).

Here, Plaintiff cannot assert *Bivens* claims against agencies such as Defendants United States, FCI Mendota, and the Bureau of Prisons.  Thus, Plaintiff's *Bivens* claims against Defendants United States, FCI Mendota, and the Bureau of Prisons should also be dismissed with prejudice because granting Plaintiff leave to amend would be futile. *Hartmann*, 707 F.3d at 1130.

### 5.  The Federal Tort Claims Act

"[T]he district courts … have exclusive jurisdiction of civil actions on claims against the United States, for money damages … for injury or loss of property, or personal injury or death

1    caused by the negligent or wrongful act or omission of any employee of the Government while

2    acting within the scope of his office or employment, under circumstances where the United

3    States, if a private person, would be liable to the claimant in accordance with the law of the place

4    where the act or omission occurred." 28 U.S.C. § 1346(b).

5           The Federal Tort Claims Act ("FTCA") provides that the United States shall be liable for

6    tort claims "in the same manner and to the same extent as a private individual under like

7    circumstances." 28 U.S.C. § 2674. "The [FTCA] is a limited waiver of sovereign immunity,

8    making the Federal Government liable to the same extent as a private party for certain torts of

9    federal employees acting within the scope of their employment." *United States v. Orleans*, 425

10   U.S. 807, 813 (1976). The United States is not liable under the FTCA for constitutional tort

11   claims. *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994). The FTCA "makes the United States liable

12   'in the same manner and to the same extent as a private individual under like circumstances.'"

13   *United States v. Olson*, 546 U.S. 43, 46 (2005) (emphasis omitted) (quoting 28 U.S.C. § 2674).

14   "The law of the place in § 1346(b) has been construed to refer to the law of the state where the act

15   or omission occurred. Thus, any duty that the United States owe[s] to plaintiff[] must be found in

16   California state tort law." *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1025 (9th Cir. 2001)

17   (citations & internal quotation marks omitted). Additionally, administrative exhaustion is a

18   required element of a claim under the FTCA. *Gillespie v. Civiletti*, 629 F.2d 637, 640 (9th Cir.

19   1980) ("The timely filing of an administrative claim is a jurisdictional prerequisite to the bringing

20   of a suit under the FTCA, and, as such, should be affirmatively alleged in the complaint")

21   (citation omitted).

22          Plaintiff cannot assert FTCA claims against individual Defendants White, Lehman and

23   Alcantor because the only proper defendant for purposes of an FTCA claim or claims is the

24   United States of America. *See Kennedy v. U.S. Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998)

25   ("the United States is the only proper party defendant in an FTCA action"). BOP is also an

26   agency and is not a proper defendant in an FTCA action. *See FDIC v. Craft*, 157 F.3d 697, 706

27   (9th Cir. 1998) (although FTCA claims can arise from acts or omissions of federal agencies, "an

28   agency itself cannot be sued under the FTCA").

                                                  20

1      Plaintiff alleges he "submitted an SF-95 to the regional BOP counsel (Administrative

2  Claim No. TRT-WXR-2021-02085) …." (Doc. 14 at 17.) Therefore, Plaintiff has exhausted his

3  administrative remedies regarding his FTCA claims. *See* 28 C.F.R. § 14.2(a); *Warren v. U.S.*

4  *Dep't of Interior Bureau of Land Mgmt.*, 724 F.2d 776, 780 (9th Cir. 1984).  However, Plaintiff's

5  FTCA claims are insufficiently pled. "A claim is actionable if it alleges the six elements of §

6  1346(b), which are that the claim be: [1] against the United States, [2] for money damages, ... [3]

7  for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful

8  act or omission of any employee of the Government [5] while acting within the scope of his office

9  or employment, [6] under circumstances where the United States, if a private person, would be

10  liable to the claimant in accordance with the law of the place where the act or omission occurred."

11  *Brownback v. King*, 141 S. Ct. 740, 746 (2021) (internal citation & quotation marks omitted).

12      Here, Plaintiff's second amended complaint repeatedly refers to the "FTCA" or the

13  "FTCA/CTCA" in a conclusory fashion. Simply stating something is a violation of the

14  "FTCA/CTCA" and alleging "personal injury" or "emotional distress" is insufficient. *See e.g.*,

15  *Harris v. United States*, No. 2:19-cv-03314-AG-JDE, 2019 WL 7834813, *4 (C.D. Cal. Nov. 1,

16  2019) ("in the FTCA Section, Plaintiff purports to identify eight 'Government Tort Claims' and

17  five 'California Laws for Persons Wrongfully Convicted and Wrongfully Imprisoned' … but does

18  not explain how any of these 'tort claims' or 'California laws' are applicable in his case. Such

19  '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

20  statements' fail to comply with Rule 8"), R&R adopted 2020 WL 402126 (C.D. Cal. Jan. 24,

21  2020). Accordingly, Plaintiff's second amended complaint fails to state a claim or claims in this

22  regard.

23      If the Court finds that a complaint should be dismissed for failure to state a claim, the

24  Court has discretion to dismiss with or without leave to amend. *Lopez v. Smith*, 203 F.3d 1122,

25  1126–30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that

26  the defects in the complaint could be corrected, especially if a plaintiff is *pro se*. *Id.* at 1130–31.[2]

27

28  _____

[2] Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended
complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

1  Here, Plaintiff will be granted leave to amend his complaint to cure the deficiencies concerning
2  his FTCA claims as this Court has not previously considered them at screening.[3]

3      In any third amended complaint, Plaintiff should explain how each of the involved
4  individual's conduct meets each of the state law claims he intends to assert against the United
5  States. As noted above, while an FTCA claim is based upon conduct or actions taken by federal
6  employees during the course and scope of employment, the only proper defendant is the United
7  States of America. If Plaintiff wishes to assert an FTCA claim or claims against the United States
8  for conduct by Warden White, Plaintiff should identify the state law tort claim or claims
9  specifically related to White's conduct and demonstrate how White's actions or inactions meet
10 the elements of the state law tort claim or claims asserted. If, for example, that state law tort claim
11 is negligence,[4] Plaintiff is required to demonstrate how White's conduct meets each of the
12 elements of a negligence claim. This Court "may not supply essential elements of the claim that
13 were not initially pled," *Bruns*, 122 F.3d at 1257, and is "not required to indulge unwarranted
14 inferences." *Doe I,* 572 F.3d at 681.

15     The allegations asserted in Plaintiff's second amended complaint also involve facts
16 unrelated to Plaintiff's potentially cognizable FTCA claims. Plaintiff simply repeats the various
17 factual allegations from his earlier complaints. Since this action was severed from Plaintiff's
18 original action and concerns only Plaintiff's original "Claim VI," facts concerning a lack of

19

---

20 Plaintiff is also advised that an amended complaint supersedes the original complaint. *Lacey v. Maricopa*
21 *Cty.*, 693 F.3d 896, 927 (9th Cir. 2012). Therefore, any third amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

22 [3] Judge Grosjean did not address the FTCA claims asserted in Plaintiff's original complaint. See *Gelazela*
23 *v. United States*, No. 1:21-cv-01499-AWI-EPG (PC), 2021 WL 11088349, at *1, n.1 (E.D. Cal. Nov. 16, 2021). Concerning the first amended complaint, Judge Grosjean determined Plaintiff had adequately pled
24 an FTCA claim against the United States based on the treatment Plaintiff received or failed to receive for his knee from defendant Moore. *See Gelazela v. United States*, No. 1:21-cv-01499-AWI-EPG (PC), 2022
25 WL 843446, at *9-10 (E.D. Cal. Mar. 22, 2022).

26 [4] Under California law, to "establish a cause of action for negligence, the plaintiff must show that the
27 defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Brown v. USA Taekwondo*, 11 Cal.5th 204, 213 (Cal. 2021) (internal quotation marks omitted).

28

1    medical care for Plaintiff's knee are not relevant to this action and are the subject of another

2    action: *Gelazela v. United States of America*, No. 1:21-cv-01499-JLT-EPG (PC). Similarly, facts

3    concerning Plaintiff's right to access the court or a violation of Plaintiff's due process rights are

4    not relevant to this action—those claims are the subject to another action: *Gelazela v. United*

5    *States of America*, No. 1:22-cv-01539-ADA-EPG (PC). In other words, facts unrelated to the

6    specific claims that are the subject of this action should not be included in any third amended

7    complaint.

<strong>E.  California Government Claims Act</strong>

9    The California Government Claims Act[5] requires that a tort claim against a public entity

10   or its employees be presented to the California Victim Compensation and Government Claims

11   Board no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910,

12   911.2, 945.4, 950–950.2. Presentation of a written claim, and action on or rejection of the claim

13   are conditions precedent to suit. *State v. Superior Ct. of Kings County (Bodde)*, 32 Cal.4th 1234,

14   1239 (Cal. 2004). The "failure to timely present a claim for money or damages to a public entity

15   bars a plaintiff from filing a lawsuit against that entity." *Id*. at 1239; *Karim-Panahi v. L.A. Police*

16   *Dep't*, 839 F.2d 621, 627 (9th Cir. 1988).

17   The California Government Claims Act concerns claims brought against a California

18   public entity or its employees. *See, e.g*., Govt. Code, § 905.2 ("This section shall apply to claims

19   *against the state* …"). Plaintiff has not named a California public entity or employee in this

20   action. Although Plaintiff invokes the "CTCA" on numerous occasions in his second amended

21   complaint, Plaintiff's FTCA claims provide a remedy for the actions or conduct of federal

22   employees and rely upon California substantive law. *See, e.g., Rayonier Inc. v. United States*, 352

23   U.S. 315, 318 (1957) (to demonstrate a claim under the FTCA, a plaintiff must prove the same

24   elements that state law requires for the substantive causes of action). Therefore, to the extent

25   Plaintiff intended to assert separate "CTCA" claims, those claims should be dismissed without

26

27   _____
[5] This Act was formerly known as the California Tort Claims Act. *City of Stockton v. Superior Court*, 42
28   Cal.4th 730, 741-42 (Cal. 2007) (adopting the practice of using Government Claims Act rather than
California Tort Claims Act).

1   leave to amend.

2       **V.    CONCLUSION AND RECOMMENDATIONS**

3       Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

4       1.   Plaintiff's *Bivens* claims against all named Defendants be **DISMISSED WITH**

5           **PREJUDICE** and without leave to amend;

6       2.   Plaintiff's state law or "CTCA" claims against all Defendants be **DISMISSED**

7           without leave to amend; and

8       3.   The following Defendants be **DISMISSED** from this action:

9           a.   Warden Douglas White

10          b.   Case Manager K. Lehman

11          c.   Correctional Officer Alcantor

12          d.   Mendota FCI and

13          e.   Bureau of Prisons

14       4.   Plaintiff be **GRANTED** leave to amend his Federal Tort Claims Act (FTCA) claims

15           against Defendant United States of America; specifically, that Plaintiff be directed to

16           file a third amended complaint, curing the deficiencies identified in these findings,

17           **within 30 days** of the date of any order adopting these findings by the assigned

18           district judge.

19       These Findings and Recommendations will be submitted to the district judge assigned to

20   this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these

21   Findings and Recommendations, a party may file written objections with the Court. The

22   document should be captioned, "Objections to Magistrate Judge's Findings and

23   Recommendations." Failure to file objections within the specified time may result in waiver of

24   //

25   //

26   //

27   //

28   //

rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __September 12, 2023__          _____/s/ *Sheila K. Oberto*_____
                                                          UNITED STATES MAGISTRATE JUDGE

25