UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK A. GELAZELA,<br><br>  Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>  Defendants. | Case No. 1:22-cv-01540-JLT-SKO (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS FOLLOWING SCREENING OF PLAINTIFF'S FOURTH AMENDED COMPLAINT**<br><br>**14-DAY OBJECTION DEADLINE** |

Plaintiff is a former federal prisoner proceeding pro se and *in forma pauperis* in this action.

**I.   INTRODUCTION**

On August 5, 2024, the Court issued its Screening Order Re Plaintiff's Third Amended Complaint. (Doc. 25.) The Court determined that Plaintiff's claims arising under the Federal Tort Claims Act (FTCA), including negligence, gross, negligence, willful misconduct, and intentional infliction of emotional distress, would be considered after Plaintiff cured certain deficiencies regarding the exhaustion of administrative remedies under the FTCA. (*Id*. at 6-12.) Plaintiff was specifically advised as follows: "Plaintiff will be required to file a fourth amended complaint. He need only change the factual recitation to include the missing information concerning exhaustion

1

of his administrative remedies under the FTCA …." (*Id*. at 11.) The Court also stated it would "consider the sufficiency of the state law claims" only after amendment. (*Id*. at 11-12.)

On August 24, 2024, Plaintiff filed his fourth amended complaint. (Doc. 26.)

## II.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III.    PLEADING REQUIREMENTS

### A.    Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id*. (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal

2

theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### IV.   DISCUSSION

#### A. Plaintiff's Fourth Amended Complaint[1]

Plaintiff names the United States of America as the sole defendant in this action. (Doc. 26 at 1.) Plaintiff seeks $10,000,000 in damages, reimbursement of legal fees, and any further relief the Court determines is just and necessary. (*Id*. at 20.)

//

//

---

[1] Plaintiff's fourth amended complaint is 21 pages long (*see* Doc. 26 at 1-21) and is followed by approximately 137 pages of exhibits (*id*. at 22- 159). Plaintiff is advised that, in determining whether a complaint states cognizable claims, the Court's duty is to evaluate the complaint's factual allegations, not wade through exhibits.

**B. The Factual Allegations Regarding Exhaustion**

As noted above, Plaintiff was directed to file a fourth amended complaint to cure the deficiencies identified by the Court in its third screening order. Specifically, "the date associated with the certified mail concerning claim number TRT-WXR-2021-02085, and the date upon which he received a written denial from the Bureau of Prisons, or when he deemed the claim denied in the absence of a written denial." (*See* Doc. 25 at 11.) Plaintiff was advised that he "need only change the factual recitation to include the missing information concerning exhaustion." (*Id.* & n.6.) A review of the fourth amended complaint compared to the third amended complaint reveals Plaintiff has complied with the Court's directive. (*Cf.* Doc. 21 at 5-14 *to* Doc. 26 at 5-14.) Therefore, the Court incorporates by reference the factual allegations previously set forth in its third screening order, (*see* Doc. 25 at 4-6), except for the new information alleged in Plaintiff's fourth amended complaint. That additional information is summarized here.

Plaintiff contends he exhausted his administrative remedies regarding his FTCA claims. (Doc. 26 at 14.) He submitted a BP 8 form on May 7, 2021, and a BP 9 form via certified mail on May 21, 2021; the receipt of both forms was acknowledged on May 25, 2021. (*Id.*) Plaintiff submitted a BP 10 form via certified mail on June 25, 2021, and a BP 11 form via certified mail on September 7, 2021. (*Id.*) Plaintiff states that although "the top sheet of each BP paperwork only [mentions] the 'compassionate release' on its face [], the attending administrative remedy packages included … all of the claims of this complaint within them." (*Id.*) Plaintiff also contends he submitted an SF 95 form to the regional Bureau of Prisons (BOP) counsel via certified mail on January 6, 2021, covering the same claims; counsel acknowledged receipt on January 15, 2021. (*Id.* at 14-15.) Plaintiff states all forms were "sent via certified mail except the BP-8 which was handed directly to the immediate staff 'unit team'—including Lehman." (*Id.*)

Plaintiff states he did not receive a reply to the BP 8 form within the time allotted by BOP policy and thus considered it denied. (Doc. 26 at 15.) Plaintiff also received a denial of the BP 9 form on June 8, 2021, and alleges the "Warden's denial did not, in any way, address the issues the Plaintiff submitted, and it ignored that the Plaintiff did meet the filing requirements" despite the Warden's assertions to the contrary. (*Id.*) Plaintiff contends he then advised the Warden on June

12, 2021, that he had in fact met the filing requirements and included factual support, but did not receive a reply. (*Id*.) Plaintiff considered the BP 9 denied. (*Id*.)

Plaintiff contends he did not receive a reply to the BP 10 form within the time allotted by BOP policy and thus considered it denied. (*Id*.) When he did not receive a reply to the BP 11 form as provided for by policy, he considered it denied "and moved to a civil complaint which, under law, had to be submitted within six months after the final denial of his SF-95 form." (*Id*.) On March 11, 2021, Plaintiff received a reply to the SF 95 form, "denying his claims and also referencing a fraudulent backdating of the denial of his Compassionate Release request." (*Id*. at 15-16.) When Plaintiff responded via certified mail on July 14, 2021, "exposing the fraudulent backdating and refuting the denial of his claims," he did not receive a reply. (*Id*. at 16.) Plaintiff "considered this a final denial and moved to a civil complaint which had to be filed within six months of July 14, 2021." (*Id*.) He further contends the "last written denial was not from the regional counsel … but from the Warden" on June 8, 2021. (*Id*.) Plaintiff concludes that the complaint filed on October 8, 2021,[2] was timely. (*Id*.)

## C. Plaintiff's Claims Arising Under the Federal Tort Claims Act

Plaintiff raises FTCA claims against Defendant United States for negligence, gross, negligence, willful misconduct, and intentional infliction of emotional distress. Such claims may properly be brought against the United States by a federal inmate for injuries caused by the negligence of prison officials or employees. *United States v. Muniz*, 374 U.S. 150, 158 (1963); *Vander v. United States Dep't of Justice*, 268 F.3d 661, 663 (9th Cir. 2001). However, such FTCA claims "are to be decided 'in accordance with the law of the place where the act or omission occurred.'" *USAir, Inc. v. United States Dep't of the Navy*, 14 F.3d 1410, 1412 (9th Cir. 1994) (quoting 28 U.S.C. § 1346(b)); *see also Bolt v. United States*, 509 F.3d 1028, 1031 (9th Cir. 2007) ("'Even when the injury occurs on federal property, the finding of negligence must be based upon state law'") (quoting *Lutz v. United States*, 685 F.2d 1178, 1184 (9th Cir. 1982)).

---

[2] Plaintiff's original complaint, filed October 8, 2021, was assigned case number 1:21-cv-01499-AWI-EPG (PC). Following screening in that action, District Judge Anthony W. Ishii issued his Order Adopting Findings and Recommendations and Order Severing Claims and Directing Clerk to Open New Actions on December 1, 2022. This action was opened as a result. (*See* Docket, No. 1:21-cv-01499.)

1    Accordingly, California tort law applies to Plaintiff's FTCA claims. *USAir, Inc.*, 14 F.3d at 1412.

2    Because the Court has not recited all the factual allegations in the fourth amended complaint, and instead incorporates the facts alleged in Plaintiff's third amended complaint (except the facts specific to the exhaustion of administrative remedies), some additional background is necessary before addressing Plaintiff's claims. Briefly, while Plaintiff was incarcerated at the Federal Correctional Institution at Mendota, he sought a compassionate release pursuant to the CARES Act. He alleges numerous officials or employees at the institution — Alcantor, Blocher, Lehman, Lejeune, Lepe, and White—were negligent in processing his requests. Plaintiff further alleges that these individuals' negligent and intentional acts caused him physical and emotional injuries.

**1.   Plaintiff Has Complied With the FTCA**

"[T]he district courts … have exclusive jurisdiction of civil actions on claims against the United States, for money damages … for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The FTCA provides that the United States shall be liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. "The Federal Tort Claims Act is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976). The United States is not liable under the FTCA for constitutional tort claims. *FDIC v. Meyer*, 510 U.S. 471, 478 (1994). The FTCA "makes the United States liable 'in the same manner and to the same extent as a private individual under like circumstances.'" *United States v. Olson*, 546 U.S. 43, 46 (2005) (emphasis omitted) (quoting 28 U.S.C. § 2674). "The law of the place in § 1346(b) has been construed to refer to the law of the state where the act or omission occurred. Thus, any duty that the United States owe[s] to plaintiff[] must be found in California state tort law." *Delta Sav. Bank v. United*

6

1  *States*, 265 F.3d 1017, 1025 (9th Cir. 2001) (citations & internal quotation marks omitted).

2  Administrative exhaustion is a required element of a claim under the FTCA. *Gillespie v.*
3  *Civiletti*, 629 F.2d 637, 640 (9th Cir. 1980) ("The timely filing of an administrative claim is a
4  jurisdictional prerequisite to the bringing of a suit under the FTCA, and, as such, should be
5  affirmatively alleged in the complaint") (citation omitted). 28 U.S.C. § 2675(a), provides in part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). This is a jurisdictional prerequisite to pursuing an FTCA claim in a district court. *Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000) (stating that a claimant under the FTCA must comply with 28 U.S.C. § 2675(a) before a district court can exert jurisdiction over the claim). "Because the requirement is jurisdictional, it 'must be strictly adhered to. This is particularly so since the FTCA waives sovereign immunity. Any such waiver must be strictly construed in favor of the United States.'" *Brady*, 211 F.3d at 502 (quoting *Jerves v. United States*, 966 F.2d 517, 521 (9th Cir.1992)). Exhaustion under the Prison Litigation Reform Act does not satisfy the requirement to exhaust under the FTCA. *Cf*. 28 C.F.R. §§ 542.13-15 (Bureau of Prisons administrative grievance procedures) to 28 C.F.R. §§ 543.30-32 (administrative exhaustion procedures for the FTCA within the Bureau of Prisons).

Liberally construing the complaint and accepting all facts alleged as true, Plaintiff appears to have exhausted his administrative remedies. He presented his claims to the BOP and either received a denial of those claims or the allotted time expired without a response, amounting to a denial. 28 U.S.C. § 2675(a); *Brady*, 211 F.3d at 502; *Gillespie*, 629 F.2d at 640. Thus, the Court moves on to consider Plaintiff's tort claims of negligence, gross negligence, willful misconduct, and intentional infliction of emotional distress.

//

### 2. Plaintiff Plausibly Alleges Negligence

Plaintiff claims that "[u]nder the FTCA, via California law, the Defendant stands in violation of the Tort of Negligence." (Doc. 26 at 16.) Plaintiff asserts Acting Warden Lepe had a duty to use due care, breached that duty while Plaintiff was an inmate in Defendant United States's care by violating protocol, failing to exercise ordinary care, and losing his package, and that Lepe's breach was the proximate cause of Plaintiff's physical, mental, and emotional injuries and damages. (*Id*.) Plaintiff's injuries include his inability to walk without the assistance of a cane or crutches, "permanent trouble breathing," anguish, distress, anxiety, pain, sleeplessness, nightmares, isolating himself from friends and family, and the inability to work. (*Id*. at 16-17.) The Court construes the fourth amended complaint to assert negligence conduct by Warden White, Acting Warden Lejeune, "CMC" Blocher, Case Manager Lehman, and Officer Alcantor.

To state a negligence claim, "the plaintiff must show that (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the duty, and (3) the breach proximately or legally caused (4) the plaintiff's damages or injuries." *Thomas v. Stenberg*, 206 Cal.App.4th 654, 662 (2012).[3] Whether a defendant owes a duty of care in a particular case is a question of law resolved by the court. *Centinela Freeman Emergency Med. Assocs. v. Health Net of Cal., Inc*., 1 Cal.5th 994, 1012 (2016); *see McCurry v. Singh*, 104 Cal.App.5th 1170, 1175 (2024) (duty to be determined by court on "case-by-case basis"). "'Duty' is merely a conclusory expression used when the sum total of policy considerations lead a court to say that the particular plaintiff is entitled to protection." *Armato v. Baden*, 71 Cal.App.4th 885, 893 (1999). In determining whether a duty exists under California law, courts are to weigh, among other things, foreseeability of the harm to the plaintiff, the nexus between a defendants conduct and plaintiff's injury, and "the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach." *Id*. at 893-94 (quoting *White v. Southern Cal. Edison Co.*, 25 Cal.App.4th 442, 447 (1994)).

---

[3] "The extent of the United States' liability under the FTCA is generally determined by reference to state law." *Edison v. United States*, 822 F.3d 510, 519 (9th Cir. 2016) (quoting *Liebsack v. United States*, 731 F.3d 850, 855 (9th Cir. 2013)).

In general, a party is under no duty to control the conduct of another. *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal.3d 425, 435 (1976). An exception to this general rule may exist where the defendant is in a "special relationship" with either the injured plaintiff or a third party whose conduct created the harm that injured the plaintiff. *Id.* at 436 (citing Rest. 2d Torts, sec. 315). California recognizes that "jailers owe prisoners a duty of care to protect them from foreseeable harm." *Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal.App.4th 231, 252 (2008).

Liberally construing the fourth amended complaint and accepting all facts as true, Plaintiff plausibly alleges a negligence claim against Defendant United States based upon conduct or inaction by Alcantor, Blocher, Lehman, Lejeune, Lepe, and White. For example, Plaintiff contends Lepe owed him a duty of care, breached that duty by failing to use ordinary care and losing Plaintiff's first request for compassionate release, and that the breach caused further delay of Plaintiff's request and release to home confinement, resulting in both physical and emotional harm. *Thomas*, 206 Cal.App.4th at 662; *Giraldo*, 168 Cal.App.4th at 252.

### 3. Plaintiff Plausibly Alleges Gross Negligence

Plaintiff further claims that "[u]nder the FTCA, via California law, the Defendant stands in violation of the Tort of Gross Negligence." (Doc. 26 at 17.) He asserts White, Lejeune, Blocher, Lehman, and Alcantor had a duty to Plaintiff, breached that duty while Plaintiff was an inmate in Defendant United States's care by violating protocol, failing to exercise ordinary care and willfully endangering him, and losing or ignoring his packages. He asserts these individuals' breaches were the proximate cause of his physical, mental, and emotional injuries and damages. (*Id.* 17-18.)

"'Gross negligence is pleaded by alleging the traditional elements of negligence: duty, breach, causation, and damages. … However, to set forth a claim for gross negligence" the plaintiff must "also allege conduct by the defendant involving either 'want of even scant care'" or "an extreme departure from the ordinary standard of conduct.'" *Chavez v. 24 Hour Fitness USA, Inc.*, 238 Cal.App.4th 632, 640 (2015) (quoting *Rosencrans v. Dover Images, Ltd.*, 192 Cal.App.4th 1072, 1082 (2011); *City of Santa Barbara v. Superior Court*, 41 Cal. 4th 747, 754 (2007). Gross negligence "connotes such a lack of care as may be presumed to indicate a passive

1  and indifferent attitude toward results ...." *Chavez*, 238 Cal.App.4th at 640 (quoting *Eriksson v.*
2  *Nunnink*, 191 Cal.App.4th 826, 857 (2011)).

3  Liberally construing the fourth amended complaint and accepting all facts as true, Plaintiff
4  plausibly alleges gross negligence claims against Defendant United States for action or inaction
5  by White, Lejeune, Blocher, Lehman, and Alcantor. In addition to pleading the traditional
6  elements of duty, breach, causation, and damages, Plaintiff alleges sufficient facts alleging these
7  individuals' conduct involved such a lack of care as may be presumed to indicate indifference. He
8  contends that although White, Lejeune, Blocher, and Lehman were aware of his medical
9  conditions consisting of a knee requiring additional surgery and limiting his ability to perform
10 work as well as a history of upper respiratory infections, they repeatedly refused to accept,
11 ignored, or delayed his multiple requests for compassionate release causing him greater physical
12 harm, including permanent damage to his knee and prolonged incarceration during which he
13 contracted the COVID-19 virus that nearly killed him. Plaintiff alleges Alcantor knew he was
14 housed in an area designated for those seeking and/or pending compassionate release. Alcantor
15 moved Inmate X into Plaintiff's single cell knowing that Inmate X had been exposed to another
16 officer who had COVID and before Inmate X's test results were returned, over the objections of
17 Plaintiff and Inmate X. Inmate X was COVID positive and Plaintiff tested positive days after
18 Inmate X was forced to share Plaintiff's cell and the illness nearly killed him. *Chavez*, 238
19 Cal.App.4th at 640; *see also D'Antonio v. Monterey Bay Military Housing, LLC*, Nos. 4:21-CV-
20 2607-YGR, 4:21-CV-4535-YGR, 2021 WL 5771139, at *5 (N.D. Cal. Dec. 6, 2021) ("At this
21 juncture, the Court finds that the allegations that defendants provided plaintiffs with housing
22 teeming with pervasive health and safety hazards could plausibly support a finding of gross
23 negligence. It could constitute an "extreme departure from the ordinary standard of conduct" if
24 defendants consciously provided military servicemembers with homes that were neither safe nor
25 sanitary").

### 4. Plaintiff Fails to Allege Willful Misconduct

27 Plaintiff contends that "[u]nder the FTCA, via California law, the Defendant stands in
28 violation of the Tort willful misconduct (which also carries such interchangeable names as

'wanton misconduct,' 'serious and willful misconduct,' 'reckless (or wanton) disregard for another's safety.'" (Doc. 26 at 18.) He alleges White, Lejeune, Blocher, Lehman, and Alcantor knew of the peril, that injury was probable, and that they consciously failed to act to avoid the peril. (*Id*.) Plaintiff contends they knew of "the peril and certainly of probable harm, on May 7, 2021, Case Manager K. Lehman, flatly refused …' and '… but Alcantor ignored the risk and forced them to cell together ...." (*Id*.)

Under California law, willful misconduct is not a separate tort; it is an aggravated form of negligence that differs in quality from ordinary care, rather than degree. *Berkley v. Dowds*, 152 Cal.App.4th 518, 526 (2007). The pleading requirements for willful misconduct are stricter than those for negligence, and the acts or omissions must be more specifically described to rise to the level of willful misconduct. *Id.*, at 526, 528. "Three essential elements must be present to raise a negligent act to the level of willful misconduct; (a) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is probable, and (3) conscious failure to act to avoid the peril." *Id*. at 528 (*quoting Simmons v. Southern Pac. Transportation Co*., 62 Cal.App.3d 341, 360 (1976). "Willful misconduct ... necessarily involves deliberate, intentional, or *wanton* conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, *that danger is likely to result therefrom.*" *Bigge Crane & Rigging Co. v. Workers' Comp. Appeals Bd*., 188 Cal.App.4th 1330, 1349 (2010) (italics in original; citations omitted).

Liberally construing the fourth amended complaint and accepting all facts as true, Plaintiff fails to sufficiently allege willful misconduct. Other than merely asserting these individuals had knowledge of the peril and that injury was probable, Plaintiff fails to show their conduct was deliberate, intentional, or wanton. *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice); *see also Carter v. Prime Healthcare Paradise Valley LLC*, 198 Cal.App.4th 396, 413 (2011) ("Although the Hospital might have been negligent in its treatment of Grant, '[n]o amount of descriptive adjectives[, adverbs] or epithets may turn a negligence action into an action for intentional or wilful misconduct" [citation omitted].)

11

As explained by the California Court of Appeal for the First Appellate District, the "term 'serious and wilful misconduct' is described ... as being something 'much more than mere negligence, or even gross or culpable negligence' and as involving 'conduct of a quasi criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its possible consequences.' ... The mere failure to perform a statutory duty is not, alone, wilful misconduct. It amounts only to simple negligence." *Bigge Crane & Rigging Co.*, 188 Cal.App.4th at 1349 (citing *Mercer-Fraser Co. v. Industrial Acc. Commission*, 40 Cal.2d 102, 117 (1953)).

Here, the Court finds Plaintiff's allegations involving White, Lejeune, Blocher, and Lehman's failure to perform certain duties associated with his requests for compassionate release, and Alcantor's housing Plaintiff with Inmate X, do not involve conduct of a quasi-criminal nature amounting to willful misconduct. The allegations assert negligence or perhaps gross negligence. *Bigge*, 188 Cal.App.4th at 1349; *Berkley*, 152 Cal.App.4th at 526, 528; *see also Galvan v. Mimms*, No. 1:11-cv-00326-SAB, 2013 WL 1962688, at *5 (E.D. Cal. May 10, 2013) (finding plaintiff's allegations of an officer "shooting him in the arm, back and face [with pepper balls from a pepper pellet gun] without provocation and subsequently denying him medical care" insufficient to constitute the tort of willful misconduct). This Court will recommend therefore dismissal. *Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile").

### 5. Plaintiff Fails to Allege Intentional Infliction of Emotional Distress

Plaintiff claims that "[u]nder the FTCA, via California law, the Defendant stands in violation of the Tort of Intentional Infliction of Emotional Distress 'Prima Facie'" because White, Lejeune, Blocher, Lehman and Alcantor's conduct was outrageous. (Doc. 26 at 19-20.) He alleges that they intended to cause Plaintiff emotional distress or acted with reckless disregard of the probability he would suffer emotional distress, knowing Plaintiff was present when the conduct occurred, that Plaintiff did suffer severe emotional distress, and that these individuals knew their conduct was a substantial factor in causing Plaintiff's severe emotional distress. (*Id.*)

To state a claim for intentional infliction of emotional distress (IIED) under California law, a plaintiff must allege "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1245 (9th Cir. 2013) (quoting *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009)). The conduct must be "so extreme and outrageous as to go beyond all possible [bounds] of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Butler v. Rueter*, No. 2:22-cv-01301 KJN P, 2023 WL 1991591, at *6 (E.D. Cal. Feb. 14, 2023) (quoting *Mintz v. Blue Cross of Cal.*, 172 Cal.App.4th 1594, 1607 (2009)).[4]

Liberally construing the fourth amended complaint and accepting all facts as true, Plaintiff fails to plausibly allege IIED claims against Defendant for the action or inaction by White, Lejeune, Blocher, Lehman and Alcantor. Refusing or failing to properly handle Plaintiff's compassionate release requests, fraudulently backdating documents, shutting off televisions that allowed for programming related to Earned Time Credits, moving, housing and/or locking down Plaintiff and other inmates in accommodations that lacked amenities (e.g., ice, constant air conditioning) during the pandemic, housing Plaintiff with Inmate X, or even "'put[ting] on a show' that would have made 'Cirque du Soliel' seem lame by comparison" during an onsite visit from officials from the Centers for Disease Control, does not involve conduct so extreme and outrageous as to go beyond all possible bounds of decency, to be regarded as atrocious and utterly intolerable. *See, e.g.*, *Reynolds v. Shure*, 148 F.Supp.928, 933 (E.D. Cal. 2015) ("disputes over the handling of insurance claims are not generally considered outrageous conduct sufficient to support a cause of action for intentional infliction of emotional distress"); *Gibson v. Dzurenda*, No. 3:18-cv-00190-MMD-WGC, 2020 WL 8611152, at *6 (D. Nev. Aug. 28, 2020) (permitting

---

[4] *See Carlsen v. Koivumaki*, 227 Cal.App.4th 879, 897 (2014) (finding summary adjudication was properly entered as to the plaintiff's IIED claim but stating: "That is not to say Jason is precluded from recovering for any emotional distress he may have suffered. To the contrary, should he prevail on his negligence or willful misconduct causes of action, damages for emotional distress are recoverable" [citation omitted].)

13

plaintiff to proceed on First Amendment claim that correctional officer improperly opened his legal mail outside of his presence, which resulted in a leak of Plaintiff's confidential Prison Rape Elimination Act report and subjected Plaintiff to be a target for retaliatory assault, but dismissing related IIED claim for lack of extreme and outrageous conduct), R&R adopted, 2020 WL 8611118 (Oct. 20, 2020); *Merrit v. Wells Fargo Bank, N.A.*, No. SACV 18-1960 JVS, 2019 WL 1951608, at *6 (C.D. Cal. Mar. 15, 2019) (a bank employee's refusal to process a loan application combined with that employee's alleged invocation of an extremely offensive racial epithet, other insults, and hostile conduct did not constitute extreme and outrageous conduct for the purposes of an IIED claim); *Novak v. Merced Police Department*, No. 1:13-cv-01402-BAM, 2016 WL 2984278, at *13 (E.D. Cal. May 23, 2016) ("fraudulent misrepresentations, without more, are not sufficiently outrageous to support a cause of action for intentional infliction of emotional distress"); *Cooper v. TriWest Healthcare All. Corp.*, No. 11-CV-2965-L RBB, 2013 WL 5883784, at *2, 6 (S.D. Cal. Oct. 30, 2013) ("Mere denial or delay of insurance benefits," even where there is medical evidence suggesting that denial is improper, "does not constitute outrageous conduct sufficient to support an IIED claim"). Rather, these individuals' conduct is akin to insults, indignities, annoyances or petty oppressions. *See Hughes*, 46 Cal.4th at 1051; *Butler*, 2023 WL 1991591, at *6 (finding plaintiff failed to sufficiently allege extreme or outrageous conduct by Defendants for transferring inmates during COVID outbreaks and exposing plaintiff and inmates to the virus.[5] The Court will recommend dismissal of Plaintiff's IIED claim. *Hartmann*, 707 F.3d at 1130.

//

//

//

---

[5] *Cf. Morse v. Cnty. of Merced*, No. 1:16-cv-00142-DAD-SKO, 2016 WL 3254034, at *13 (E.D. Cal. June 13, 2016) (denying defendant's motion to dismiss and stating: "Here, the conduct alleged by plaintiff in his complaint goes far beyond 'mere insults' or indignities. Taking those allegations as true, the individual defendants knowingly misrepresented information in order to arrest him and charge him with murder, apparently in order to exact political retribution against plaintiff's father, a local politician who had been critical of the Sheriff's Department. A jury could certainly find this behavior was extreme and outrageous and beyond the bounds of decency").

### V.     CONCLUSION AND RECOMMENDATIONS

For the foregoing reasons, the Court **HEREBY RECOMMENDS** that:

1. This action **PROCEED** *only* on Plaintiff's claims against Defendant United States alleging negligence and gross negligence; and

2. Any remaining claims in Plaintiff's fourth amended complaint be **DISMISSED**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed fifteen (15) pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **May 15, 2025**                    /s/ *Sheila K. Oberto*
                                                                          UNITED STATES MAGISTRATE JUDGE